(November 15, 1897.)

## STATE v. FITZPATRICK.

[51 Pac. 112.]

FORECLOSURE OF MORTGAGE—PERMANENT FUND.—The provisions of section 1266 of the Revised Statutes of 1887 are not applicable to the state in a suit brought by the state to foreclose a mortgage taken to secure the payment of a loan made from the permanent school fund of the state.

CONSTITUTIONAL LAW WITH REFERENCE TO SCHOOL FUNDS—ALSO INTEREST THEREON.—As section 3, article 9, of the state constitution declares that said permanent school fund shall forever remain inviolate and intact, and all interest thereon shall be expended in the maintenance of the schools of the state, the legislature is prohibited from enacting any law that would directly or indirectly divert either principal or interest to any other purpose.

BOARD OF LAND COMMISSIONERS—EXTENT OF THEIR AUTHORITY.—The state board of land commissioners has power to make legal contract in loaning the school fund, and cannot bind the state beyond the authority given them by law.

FORFEITURE—USURY.—The unauthorized acts of said board held not to work a forfeiture or impose a penalty directly or indirectly on the state.

DUTY OF DISTRICT ATTORNEYS—Under the provisions of section 3 of an act defining the duties of district attorneys (1st Sess. Laws 1890-91, p. 46), it is the duty of the district attorney to prosecute foreclosure cases where the state is a party.

BOARD NOT AUTHORIZED TO EMPLOY AN ATTORNEY.—Under the pro-
visions of section 29 of an act defining the powers of the state
board of land commissioners (2d Sess. Laws 1893, p. 139), the
secretary of said board is not authorized to employ an attorney to
prosecute the foreclosure of a mortgage wherein the state is a
party, for the collection of a debt arising out of a loan from the
permanent school fund of the state.

(Syllabus by the court.)

APPEAL from District Court, Ada County.

Attorney General R. E. McFarland and S. L. McFarland,
for the State.

This is an action brought by the state of Idaho against
Thomas Fitzpatrick to foreclose a mortgage which was given
to secure the payment of a loan of school money made by the
state to said Fitzpatrick, and evidenced by a certain promissory
note executed and delivered to plaintiff by said Fitzpatrick.
To said note are attached five coupon interest notes for the
sum of $140 each. No testimony was offered by defendant.
The court's findings were in accord with the allegations of
the complaint, except that the court held "that the note and
mortgage contracted for interest upon interest, which was not
due at the date of said contract." The court erred in holding
the rate of interest contracted for in the note and mortgage
greater than is authorized by section 1266 of the Revised Stat-
utes. Section 1266 is a penal statute. (Black on Interpreta-
tion of Laws, p. 293; Sutherland on Statutory Construction, sec.
356; *Coble v. Shaffner*, 75 N. C. 42; *Farmers' etc. Bank v. Dear-
ing*, 91 U. S. 29.) The provisions of said section do not apply to
the state; for it is a fundamental principle of law that the state
can do no wrong. (1 Cooley's Blackstone, p. 246.) General
words in a statute do not include nor bind the government by
whose authority the statute was enacted, where its sovereignty,
rights, prerogatives or interests are involved. It is bound only
by being expressly named or by necessary implication from
the terms and purpose of the act. (Black on Interpretation of
Laws, p. 119, sec. 54; *United States v. Heron*, 20 Wall. 251;
*United States v. Hewes*, 1 Crabbe, 307, 26 Fed. Cas. No. 15,359,
page 297; *United States v. Hoar*, 2 Mason, 311, 26 Fed. Cas.
No. 15,373, page 329; *Dollar Savings Bank v. United States,*

19 Wall. 227; *Hoge v. Brookover,* 28 W. Va. 310; Broom's Legal Maxims, p. 66.)   The fourth and last error assigned relates to the order of the court in awarding the costs herein against the plaintiff.   Had plaintiff failed entirely to recover in this action, costs could not have been awarded against it. (*State v. Kinne,* 41 N. H. 238.)   The court awarded plaintiff an attorney's fee of $200.   Plaintiff proved the following facts, to wit: 1. That the attorney general and the secretary of the state board of land commissioners of the state of Idaho employed plaintiff's attorneys to commence and prosecute this action; 2. That plaintiff agreed and promised to pay its said attorneys for said services the percentage specified in said mortgage as an attorney's fee; 3. That said percentage is a reasonable attorney's fee for the services rendered in said case.   We think the board had authority to exact this of the mortgagee. It is competent for parties to a mortgage to stipulate for the payment of a reasonable attorney's fee in case of foreclosure. (*Hitchcock v. Merrick,* 15 Wis. 522; *Tallman v. Truesdell,* 3 Wis. 443; *Boyd v. Sumner,* 10 Wis. 41; *Avery v. Maude,* 112 Cal. 565, 44 Pac. 1020; *Broadbent v. Brumback,* 2 Idaho, 366, 16 Pac. 555; *Sheffner v. Healy,* 57 Ill. App. 90; *Dorsey v. Wolff,* 142 Ill. 589, 34 Am. St. Rep. 99, 32 N. E. 495; *Behrens v. Dignowitty,* 4 Tex. Civ. App. 201, 23 S. W. 288; *Barry v. Guild,* 126 Ill. 439, 18 N. E. 759.)

W. E. Borah, for Respondent.

It will be noticed from the record that there is no contention but what the mortgage in question is in violation of the statutes of Idaho with reference to usury, being section 1266 of the Revised Statutes.   But the contention is that, notwithstanding this, upon the theory that the state can do no wrong or is not bound by penal statutes, the statute should not apply in this case.   The state must be governed by the same rules of common honesty and justice which bind individuals.   It is for its interests that its contract should be binding on all the parties thereto.   If it can at pleasure violate or abandon its contracts in the absence of any stipulation authorizing it to do so, there will be such uncertainty and risk attending all its contracts that it will come into the market for work and material at a great

disadvantage. (*Danolds v. State,* 89 N. Y. 36, 42 Am. Rep. 277; *People v. Stevens,* 71 N. Y. 549.) When a state becomes a party to a contract, the same rules of law apply to it as to private persons under like circumstances. (*Davis v. Gray,* 16 Wall. 203; *Patton v. Gilmer,* 42 Ala. 548, 94 Am. Dec. 665; *Carr v. State,* 127 Ind. 204, 22 Am. St. Rep. 624, 26 N. E. 778; *Moore v. State,* 47 Md. 467, 28 Am. Rep. 483; Black on Interpretation of Laws, sec. 54.) The same principle announced in the above authorities would cover the question of costs. Besides, our statute expressly provides for costs against the territory or state. (Idaho Rev. Stats., sec. 4917; *Flint etc. Ry. Co. v. Board of State Auditors,* 102 Mich. 500, 60 N. W. 971; *Romine v. State,* 7 Wash. 215, 34 Pac. 924.)

SULLIVAN, C. J.—This action was brought by the state to foreclose a mortgage against Thomas Fitzpatrick and James Gadsden. The state, through the state board of land commissioners, made the loan, secured by said mortgage, from the permanent school fund of the state, under authority given said state board by the constitution and an act entitled "An act defining the duties of the state board of land commissioners, to provide for the selection, location, protection, sale, rental, and general management of the public lands of the state, and for the investment of funds arising from the sale and leasing of such lands." (1st Sess. Laws 1890-91, p. 109.) As said loan was made on March 1, 1892, the acts of 1893 and 1895, amendatory of said act of 1891, have no bearing on this case. The complaint contains the usual allegations in foreclosure actions, and prays for judgment for the sum of $2,000, with interest thereon at the rate of seven per cent from the first day of March, 1893, to the first day of March, 1897, and interest thereafter at the rate of ten per cent per annum; for $93.32, taxes paid, and interest thereon; and an attorney's fee of ten per cent on the amount awarded the plaintiff on foreclosure of said mortgage; also for a decree of foreclosure, and for costs. Five interest coupon notes were given, each for $140, representing the interest agreed to be paid each year. Said interest notes and the principal note contain the following clause, to wit: "This note bears interest at ten per cent after due." The de-

fendant Thomas Fitzpatrick answered, and denied, on information and belief, that the ten per cent provided for as attorneys' fees in said mortgage was to be paid to the attorneys for the plaintiff, or that a fee of that amount or any amount is reasonable or just, and that said agreement to pay attorneys' fees was without consideration and void, and that plaintiff has no right, power, or authority to collect the same; and, further answering, avers that said note and mortgage are in violation of the provisions of section 1266 of the Revised Statutes in that, according to the terms of said note and mortgage, they provide that the defendant shall pay interest upon interest; and prays that the plaintiff have judgment in accordance with the provisions of section 1266 of the Revised Statutes. A trial was had, and judgment and decree were entered in accordance with the prayer of the answer, and as provided for in said section 1266 of the Revised Statutes, and also for attorneys' fees, as prayed for in the complaint, and that the state pay the costs of the action. This appeal is from the judgment.

Four errors are assigned. The first three are to the same point, and will be considered together. They raise the question as to whether said promissory notes and mortgage are usurious contracts, under the provisions of title 7, chapter 10 of the Revised Statutes of 1887. The title of said chapter is "Money of Account and Interest." Section 1263 of said chapter fixes the legal rate of interest to be allowed on money when there is no express contract in writing fixing a different rate. Section 1264 fixes the rate of interest that may be contracted for in writing, and on judgments rendered on such written contracts. Section 1265 is as follows: "Compound interest is not allowed, but a debtor may agree in writing to pay interest upon interest overdue at the date of such agreement." Section 1266 fixes the penalty to be imposed on contracts in violation of the provisions of said chapter when suit is brought thereon, and is as follows: "If it is ascertained in any suit brought on any contract that a rate of interest has been contracted for greater than is authorized by this chapter, either directly or indirectly, in money or in property, such contract works a forfeiture of ten cents on the hundred by the year and at that rate, upon the amount of such contract, to the school fund of the county in

which the suit is brought, and the plaintiff must have judgment
for the principal sum less all payments of principal or interest
theretofore made and without interest or cost. The court must
render judgment in said action for ten per cent per annum upon
the entire principal of said contract, against the defendant in
favor of the territory for the use of the school fund of the
county, whether the unlawful interest is contested or not; and
in no case where unlawful interest is contracted for must the
plaintiff have judgment for more than the principal sum less
the payments already made, whether the unlawful interest be
incorporated with the principal sum or not. But no indorsee
in due course of negotiable paper is affected by any usury ex-
acted by any former holder of such paper unless he have actual
notice of the usury previous to his purchase; but in such case
the judgment above provided in favor of the school fund must
be entered against the drawer or maker, if a party to the action;
he may recover back the usury paid from the party who re-
ceived the same."

By the provisions of said promissory notes, interest upon in-
terest was stipulated to be paid at the time the notes were
executed, which stipulation was in contravention of the pro-
visions of section 1265 of the Revised Statutes of 1887. The
money loaned to the respondent by the state board of land com-
missioners was from the permanent school fund of the state,
derived from the sale and rental of the school land of the state.
Section 5 of the act of Congress admitting Idaho as a state
provides, *inter alia,* that all lands granted for educational pur-
poses shall be disposed of only at public sale, and that the pro-
ceeds arising therefrom shall constitute a permanent school
fund, the interest of which only shall be expended in the sup-
port of the schools of the state. Section 12 of said admission
act provides that said lands so granted shall be held, appropri-
ated, and disposed of exclusively for the purpose therein men-
tioned, in such manner as the legislature of the state may pro-
vide. Said lands were accepted by the state on those condi-
tions. The people have spoken on this subject in the constitu-
tion of the state. They declare, in section 3 of article 9 of the
constitution, as follows: "The public school fund of the state
shall forever remain inviolate and intact. The interest thereon

only shall be expended in the maintenance of the schools of the state, and shall be distributed among the several counties and school districts of the state . . . . in such manner as may be prescribed by law. No part of this . . . . fund, principal or interest shall ever be transferred to any other fund, or used, or appropriated except as herein provided. The state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed. The state shall supply all losses thereof that may in any manner occur." Section 8 of said article 9 prescribes some of the duties of the state board of land commissioners, fixes the minimum for which said land may be sold per acre, and declares that the legislature shall provide for the sale of said lands from time to time, and for the sale of timber on state lands, and for the faithful application of the proceeds thereof in accordance with the terms of the grant in the act of admission. Section 11 of said article 9 provides, among other things, that said permanent school fund shall be loaned on first mortgages on improved farm lands within the state, under such regulations as the legislature may provide.

In compliance with the command of the constitution in that regard, the first legislature of 1890 and 1891 enacted the law above referred to. (See Laws 1890-91, p. 109.) The twenty-third section of said act is as follows: "The said board shall, at their regular meeting, make the necessary orders for the investment or disposal of the principal of the funds derived from the sale of public lands (except university lands) then in the treasury. The proceeds arising from the sale and rental of lands, other than educational lands donated to the state, may be invested for and on account of the specific purpose for which donated, and shall be invested in state, county or United States bonds, or in first mortgage on improved farm lands within the state; but no loan shall be made of any amount of money exceeding one-third of the market value of the land at the time of loan, exclusive of improvements." And the twenty-eighth section of said act is as follows: "The board shall have power to make all needful rules and regulations not inconsistent with law for the purpose of carrying out the provisions of this act." The needful rules and regulations provided for by said section

were made by said board. Blank promissory notes and mortgages were prepared, and used in making loans. The legislature failed to fix the rate of interest that such loans should draw, and said board fixed the rate at seven per cent per annum. The promissory notes and mortgages prepared by said board provided for compound interest, or interest upon interest after the same became due. This regulation or requirement was inconsistent with the law then in force, and said board exceeded the authority given it by the legislature when it made a provision for the borrower to pay compound interest before interest was due. It will be observed that said board was authorized to make all needful rules and regulations "not inconsistent with law," for the purpose of carrying out the provisions of said act. If, under that power, said board made a rule or regulation in violation of existing law, such rule or regulation was absolutely void, and would not bind the state. Said board did not possess plenary power. It possessed only limited powers, such as were given it by the legislature. As the agent of the state, it could bind the state within the scope of its authority, but not beyond it. The board's unauthorized acts cannot be held to work a forfeiture or impose a penalty, directly or indirectly, upon the state.

It is contended that, as said promissory notes and mortgage called for compound interest, the provisions of said section 1266 of the Revised Statutes (above quoted) are applicable to this case, and must be followed in entering judgment therein. That section prescribes the penalty for making usurious contracts or contracts for unlawful interest. It declares that such unlawful contract works a forfeiture of ten cents on the hundred by the year, and at that rate upon the amount of such contract to the school fund of the county in which the suit is brought, and that the plaintiff must have judgment for the principal sum only, less all payments of principal or interest theretofore made, and without interest or costs. The court is required to render judgment for ten per cent per annum upon the entire principal of such contract, against the defendant, in favor of the state, for the use of the school fund of the county in which the suit is brought. To apply the provisions of said section 1266 to the case at bar would deplete the permanent school fund, in viola-

tion both of the act admitting Idaho as a state and the provisions of said section 3 of article 9 of the constitution, which declares that said public school fund shall forever remain inviolate and intact, and that the interest thereon only shall be expended in the maintenance of the public schools of the state. The people, through the constitution, have thus declared for what purpose all interest on the permanent fund shall be applied. No part of it can be expended in the payment of forfeitures or penalties imposed by the statute law of the state. Any law enacted by the legislature diverting one dollar of principal or interest of said fund to other purposes would be unconstitutional. And if the state had been expressly named as coming within the provisions of said section 1266, which it is not, said statute would be unconstitutional so far as the state is concerned. The constitution expressly prohibited the legislature from enacting a law that would divert one dollar of said funds otherwise than as provided by the constitution.

In the face of those solemn provisions of the constitution, it is sought in this action to impose a forfeiture or penalty of $560 out of accrued interest earned by $2,000 of the permanent school fund, which interest, the constitution declares, must be distributed to the schools throughout the state; and also to reduce the permanent school fund $133.44, which fund, the constitution has declared, must be kept inviolate and intact. The legislature cannot thus do indirectly what it is prohibited from doing directly. The defendant is not injured by holding the provisions of said section 1266 not applicable to this case. He will be required to pay seven per cent interest, instead of ten. The state does not demand compound interest, in accordance with the illegal provisions of the contracts sued on, but only lawful interest. The court erred in entering judgment for costs against the state. Costs must go against the defendant.

The authorities cited by respondents involve the question of the right of the state to violate the obligations of its contracts. That question does not arise in this case. With the general doctrine laid down in those cases we are in full accord. The first case cited by respondents is that of *Danolds v. State,* 89 N. Y. 36, 42 Am. Rep. 277, which involved contracts made by the state for the construction of public works. The contractors

entered upon the work, and furnished a large amount of ma-
terials, and did much work, under the contracts; and long be-
fore the work was completed, the state stopped the work, and
refused to permit the contractor to complete his contract; and
a claim for damages was presented to the state board of audit
for damages for breach of the contract on the part of the state.
The damages so claimed were mainly for prospective profits
which the contractors would have made if they had been per-
mitted to perform their contracts according to their terms and
conditions. The board of audit awarded $65,000 to the claim-
ant, and the case was then taken to the supreme court, and
thereafter to the court of appeals. In deciding that case, the
court said: "The state must be governed by the same rules of
common honesty and justice which bind individuals. It is for
its interests that its contracts should be binding on all the par-
ties thereto. If it can at pleasure violate or abandon its con-
tracts in the absence of any stipulation authorizing it to do so,
there will be such uncertainty and risk attending all its con-
tracts that it will come into market for work and material at
a great disadvantage." That language was used in regard to
the violation of the obligation of the contract, and does not
apply to the case at bar, for the reason that no question of the
violation or the abandonment of a contract is here involved.
The doctrine that the agents of the state, in making contracts
for the state, can only bind it within the scope of their author-
ity, and not beyond it, is recognized as the correct rule by many
of the authorities cited by respondents. It is not contended
that the agents of the state had authority to make a contract
for illegal interest. Their authority was to make contracts not
inconsistent with existing law.

The mortgage provides for an attorney's fee of ten per cent
upon the amount of any judgment recovered thereon, and the
trial court allowed an attorney's fee of $200 to the attorneys
for the state. This court is called upon to determine whether
said attorney's fee should have been allowed by the trial court.
This suit was brought in the name of the state, in the district
court. Section 3 of an act entitled "An act defining the duties
of district attorneys of the various districts in the state," etc.,
approved February 23, 1891 (1st Sess. Laws, p. 46), provides,

among other things, as follows: "It is the duty of the district attorney (1) to prosecute or defend all actions, applications or motions, civil or criminal, in the district court of his district in which the people or the state or any of the counties of his district are interested or a party." This section is decisive of the question under consideration. The legislature has thus made it the duty of the district attorney to prosecute or defend all actions, civil as well as criminal, in which the state is interested or is a party.

But it is contended that, by the provisions of section 29 of an act defining the powers of the state board of land commissioners (see 2d Sess. Laws 1893, p. 139), the secretary of said board is authorized to employ competent counsel to represent the state "in all suits, actions, controversies, or claims relating to state lands or timber before the several United States land offices in this state, before the general land office in Washington, D. C., and before the courts of this state and of the United States," and that said authority is broad enough to, and does, give the secretary of said board power to employ counsel to prosecute the foreclosure of mortgages such as the one in this action. We cannot consent to that view. The above language quoted from said section 29 is too plain to require construction. It declares that the secretary of said board may employ counsel to represent the state in all suits, actions, controversies, or claims relating to state lands or timber. It says nothing about the foreclosure of mortgages, and we do not think that the provisions of said section can be extended by construction to include them. Section 3 of an act of 1891, defining the duties of district attorneys, above cited, makes it the duty of the district attorney to prosecute foreclosure cases such as the one at bar.

The conclusion reached is that the legislature, by proper enactment, has provided an officer to represent the state in the several district courts of the state in civil cases such as the one at bar, and has provided for his compensation. The secretary of the state board of land commissioners has no authority to employ an attorney to represent the state in such cases. It is a well-established rule that, in cases where an attorney's fee is provided for, the plaintiff is not entitled to judgment for more than a reasonable attorney's fee, and not for more than

plaintiff has paid his attorney in the case in which the fore-closure has been sought. In the case at bar the salary of the district attorney for all his services is fixed by law, and he is not entitled to additional compensation for performing these services. Therefore the state is not entitled to judgment for attorney's fees in this. The judgment of the court below must be reversed, and it is so ordered; and the court below is ordered to set aside said judgment, and enter judgment in favor of the state, in conformity with the views expressed in this opinion. Costs of this appeal are awarded to the state.

Huston and Quarles, JJ., concur.