## IN RE SCHOOL FUND.

1. **Investment of School Fund.** The board of educational lands and funds have authority to invest the permanent school fund in U. S. three per cent bonds.

2. ———. Payment of premiums in purchase of U. S. bonds should be made from the permanent school fund. Payment of premium in purchase of county bonds should be made from temporary school fund.

3. ———. In purchasing high rate of interest coupon bonds, the board cannot detach coupons therefrom so that the remaining coupons will net the state 6 per cent from the date of purchase to maturity.

4. ———. After investment in U. S. three per cent bonds, the board cannot sell or convert them into other securities. When paid they may be re-invested as the board deem best.

THIS was a matter coming before the court by the following letter:

"OFFICE OF THE BOARD OF EDUCATIONAL LANDS AND FUNDS,
LINCOLN, NEB., Nov. 13, 1883.

"*To the Supreme Court of the State of Nebraska:*

"We, the undersigned members of the board of educational lands and funds, would respectfully represent that

a doubt exists in regard to the construction of section 9, article 8, of the constitution, and section 29 of an act entitled, "An act to provide for the registry, sale, and general management of school lands and funds," approved February 24th, A.D. 1883, and if not inconsistent with the duties of your honorable court, in order to further the proper execution of the law, we would respectfully solicit an opinion upon the following questions:

*First.* Can the board of educational lands and funds, under the said section of the constitution and the law, invest the principal of the permanent school fund in U. S. three (3) per cent bonds, either at par or at a premium. If so, can they pay a premium therefor from the temporary school fund, or will the board in paying such premium be compelled to draw from the permanent school fund therefor?

*Second.* Can such board, in purchasing a high rate of interest registered county bond, detach coupons therefrom so that the remaining coupons will net the state six (6) per cent from the date of purchase to maturity?

*Third.* Have the board, after purchasing U. S. three (3) per cent bonds for the permanent school fund, the power under the law to sell or convert such bonds into high rate of interest registered county bonds?

Respectfully submitted,

A. G. KENDALL,
*Com. Public Lands and Buildings.*

E. P. ROGGEN,
*Secretary of State.*

ISAAC POWERS, JR.,
*Attorney General.*

JAMES W. DAWES,
*Governor.*

*Members of the Board of Educational Lands and Funds*

In re School Fund.

OPINION OF THE JUDGES.

*To the Honorable the Board of Educational Lands and Funds:*

GENTLEMEN—Deeming an answer to the questions propounded by you in your communication of the 13th instant respecting the investment of permanent school funds of the state not inconsistent with our duties, we submit the following:

To the *first* question, taking them in the order in which they are put, we answer that you clearly have the authority, under the sections of the constitution and statute to which you refer, to invest those funds in United States three per cent bonds if you deem it advisable to do so. The doubt you mention of your right to invest in these three per cent bonds was prompted, very likely, by the low rate of interest which they bear, together with the *proviso* in section 29 of the act of February 24th, 1883 [Comp. Stat., appendix, 1883, p. 888], relative to investments in "high rate of interest bonds" of counties, which cannot be made so as to net "a lower rate of interest than six per cent per annum." But this restriction extends at most only to the purchase of county bonds, and evidently has no reference whatever to investments in United States and state securities.

As to the payments of premiums, if they be necessary in the purchases of United States bonds, these must be made out of the permanent school fund, for there is no authority for making them out of any other. The only cases in which premiums can be paid out of the temporary school fund are those of investments in "high rate of interest" county bonds, as provided in the above mentioned section. And even these, but for this special provision, would have to be made out of the permanent fund. The payment of

a premium in making an investment when the market value of the security purchased justifies and requires it, is a legitimate use of the money as a part of the investment, and does in no sense violate the constitutional provision that this fund "shall remain forever inviolate and undiminished." Investments of this fund in any of the securities permitted by the constitution, whether at their par value, or above or below it, although made in the reasonable hope of an advance in their market value, and a consequent gain, must necessarily be at the hazard of a depreciation and consequent loss. Within the restriction of the constitution which limits these investments to United States and state securities and registered county bonds, the law leaves them entirely to the judgment of your honorable body.

To the *second* question, we answer, no. While, so far as we now see, a purchase of "high rate of interest" county bonds in the mode suggested by the question might produce substantially the same result as would that designated by the statute, it is different. And where the legislature in precise terms have specified the means by which to reach a desired end, those means should be used. By using the means provided there is absolute safety of action, while in adopting and using any other there is not. The mode of paying the premium required in the purchase of this sort of bonds the statute provides must be from the temporary school fund, and this should be followed.

To the *third* question, we answer, no. The authority given by the statute to the board is simply to direct investments of the money on hand in certain specified securities, not to change investments, when once made, from one security to another. If the legislature had intended that such changes might be made, doubtless the power to make them would have been clearly expressed, and not left to a forced construction of the statute. Where, however, securities in which investments have been made mature, and the money

is returned to the fund, it is then within the control of the board for reinvestment.

Very respectfully,

GEO. B. LAKE,

*Chief Justice.*

COBB and MAXWELL, J.J., concur.