[File No. 6726.]

JOHN MOSES, Governor of the State of North Dakota; Alvin C. Strutz, Attorney General of the State of North Dakota; A. E. Thompson, Superintendent of Public Instruction of the State of North Dakota; Berta E. Baker, State Auditor of the State of North Dakota; and Herman Thorson, Secretary of State of the State of North Dakota, Constituting the Board of University and School Lands of the State of North Dakota, Respondents, v. BERTA E. BAKER, as State Auditor and Carl Anderson as State Treasurer of the State of North Dakota, Appellants.

(299 NW 315)

Opinion filed July 21, 1941

*Robert Birdzell,* for appellants.

*Alvin C. Strutz,* Attorney General, and *P. O. Sathre,* Assistant Attorney General, for respondents.

NUESSLE, J. This proceeding in mandamus was brought to compel the defendant, state auditor, to issue warrants in payment of certain bonds bought by the Board of University and School Lands, and to direct the defendant, state treasurer, to pay the same when presented. The case was tried to the court. The facts were stipulated and the court ordered judgment directing the issuance of warrants and the payment thereof as prayed. Judgment was entered accordingly and the defendants perfected the instant appeal.

The Board of University and School Lands, seeking investment for a portion of the money in the Permanent School Fund, arranged to buy

certain United States government bonds. These bonds bore interest at the rate of 2¾ per cent, payable semi-annually. The price of the bonds at the time the board decided to purchase the same was One hundred three and twenty-eight thirty-seconds ($103.28/32) Dollars, and accrued interest. The yield was figured at approximately 2 and 59/100ths per cent to the maturity of the bonds.

The State Land Commissioner, the secretary and agent of the board, pursuant to their direction, drew vouchers on the Permanent School Fund for the purchase price of the bonds, less accrued interest, and on the Interest and Income Fund for the amount of the accrued interest. These vouchers were presented to the state auditor and she was requested to issue her warrants on the respective funds for the amounts for which said vouchers were drawn. The auditor refused to do this, assigning as reasons therefor first, that the board had no power to purchase bonds at a price greater than par, and, second, that in any event, the whole price paid, including the amount of the accrued interest must be paid out of the Permanent Fund and accordingly the amount of the accrued interest could not be paid out of the Interest and Income Fund.

The district court held that the board was vested with a discretion in the matter of investments; that the proposed purchase was one which, although a premium was paid for the bonds, nevertheless netted an income return, and accordingly the board was acting within its powers when it purchased the bonds; that the vouchers were properly drawn— the one against the Permanent Fund for the par value of the bonds, plus the premium, and the one against the Interest and Income Fund for the amount of the accrued interest. So the court ordered judgment, directing the issuance of the warrants as prayed in the plaintiff's application.

The Board of University and School Lands (see N. D. Comp. Laws 1913, § 284) is a constitutional board charged, among other things, with the duty of directing the investment of funds derived from the sale of lands granted by the United States to the state of North Dakota for support of the common schools and from other sources. See N. D. Const. § 156; State ex rel. Sathre v. Board of University & School Lands, 65 ND 687, 262 NW 60. It is vested with discretion in the

performance of its duties. Fuller v. Board of University & School Lands, 21 ND 212, 129 NW 1029.

The Permanent School Fund is a trust fund. It must be preserved intact. If there is any loss, the state is required to make it good. See Const. §§ 153 and 154. The Constitution designates the securities in which the money in the fund may be invested. In that behalf, § 162 Constitution (Article 39 of Amendments, p. 260, 1921 Sess. Laws) provides: "The moneys of the permanent school fund and other educational funds shall be invested only in bonds of school corporations or of counties, or of townships or of municipalities within the state, bonds issued for the construction of drains under authority of law within the state, bonds of the United States, bonds of the "State of North Dakota, or on first mortgages on farm lands in this state, not exceeding in amount one-half of the actual value of any subdivision on which the same may be loaned, such value to be determined by the board of appraisal of school lands."

The statute, § 287, 1925 Supplement to the 1913 Comp. Laws, as amended by chapter 215, Session Laws 1929, likewise so provides. Thus it is seen that United States government bonds are securities in which investments may be made by the board. The thought both of the Constitution and of the statute is that there shall be first, security for the fund and, second, investment so there may be income to be devoted to the purposes named in the Constitution.

There is no word in either the Constitution or the statute which prohibits the purchase of securities at more than the par value thereof. In the instant case the bonds were bought at their market value. The investment nets a reasonable return considering conditions in the money market. It is as safe as any investment of that character can possibly be. There is no reason why the investment should not be made if the board, in the exercise of its judgment, deems it a proper one. See State ex rel. Sathre v. Board of University & School Lands (N. D.) supra. The fact that a premium was paid, merely increases the price of the bonds. The price of bonds fluctuates according to conditions in the securities market. It is seldom that any good bond is worth exactly par, except on the date of its maturity. A question identical with the one now here under consideration was answered by the

supreme court of the state of Nebraska in the following words: "The payment of a premium in making an investment, when the market value of the security purchased justifies and requires it, is a legitimate use of the money as a part of the investment, and does in no sense violate the constitutional provision that this fund 'shall remain forever inviolate and undiminished.' " Re School Fund, 15 Neb 685, 50 NW 272. See also Dern v. Holden, 71 Utah 130, 263 P 84; New England Trust Co. v. Eaton, 140 Mass 532, 4 NE 69, 54 Am Rep 493; Old Colony Trust Co. v. Comstock, 290 Mass 377, 195 NE 389, 101 ALR 1; Re Allis, 123 Wis 223, 101 NW 365.

It is said that the payment of a premium will result in the diminution of the Permanent Fund. If this be so, it will be only because the return from the bonds purchased is not properly applied. In the instant case, it appears that the Board made provision for the amortization of the premium charged so that a portion of the interest accruing from the bonds will be covered into the Permanent fund in such a manner that at the date of maturity the amount of the premium will be wholly repaid. Thus there will be no lessening of the Permanent Fund and the Interest and Income Fund will receive accretions from the investment at the rate of 2 and 59/100 per cent per annum. It is clear to us, therefore, that the board was acting within its powers when it bought the bonds in question, and that the defendant auditor cannot refuse to issue her warrant for the purchase price when the proper showing is made to her. See Comp Laws 1913, §§ 133 and 293.

It is the duty of the state auditor to keep a separate account of the school fund, and of the interest and income thereof. See Comp Laws 1913, § 133. Pursuant to § 154, Constitution, the interest and income may be used only for the purposes designated therein and no part thereof can be used in purchasing securities for investment. Section 154 provides: "The interest and income of this fund . . . shall be faithfully used and applied each year for the benefit of the common schools of this state . . . and no part of the fund shall ever be diverted even temporarily, from this purpose or used for any other purpose whatever than the maintenance of common schools . . . provided, however, that if any portion of the interest or income afore-

said be not expended during any year, said portion shall be added to and become a part of the school fund."

In the instant case a voucher for the amount of the accrued interest, drawn on the Interest and Income Fund, was presented to the auditor and a warrant therefor was requested. The auditor refused to issue this warrant, predicating her refusal on the provisions of § 154, supra. In this we think that she was right. The interest accrued on the bonds to date of purchase was a portion of the price the board was required to pay for the bonds. It would be repaid at the next interest payment date which, in any event, could not be more than six months thereafter. When thus paid, being a part of the purchase price, it properly should be covered into the Permanent School Fund whence the purchase price came. Hemenway v. Hemenway, 134 Mass 446. It is true that this was interest on the bonds and would be repaid as such. But it was interest already earned when the bonds were bought. It was not interest and income within the meaning of those terms as used with respect to the Interest and Income Fund. And this was the legislative thought with respect to this matter, for the statute, Comp Laws 1913, § 295, provides: "There is hereby annually appropriated such sums as shall be found necessary for the expenses of purchase, *and payment of accrued interest at the time of the purchase,* of investment bonds or mortgages for the permanent funds under the control of said board, payable from the respective fund for which said purchase is made."

After all, there should be no difficulty about a matter such as this other than that which arises from the making of bookkeeping entries. Accordingly, the trial court should not have required the auditor to issue her warrant for the amount of the accrued interest drawn on the interest and income fund. This was a part of the purchase price and should have been included with the remainder of the purchase price in the warrant drawn on the Permanent Fund.

The judgment of the district court accordingly will be modified, consistent with what we have said above and, as so modified, affirmed.

BURR, Ch. J., and BURKE, MORRIS, and CHRISTIANSON, JJ., concur.