## In re MONTANA TRUST AND LEGACY FUND

No. 10732

Submitted October 25, 1963. Decided January 13, 1964.

388 P.2d 366.

PER CURIAM.

This is an advisory opinion requested by the Montana Legislative Council with respect to the administration of the Montana Trust and Legacy Fund. While this court does not issue opinions except in matters in which a justiciable controversy exists, with respect to this fund such an opinion is required

of us under the provisions of Article XXI, § 17, of the Montana Constitution which provides:

"The justices of the supreme court of the state of Montana are hereby made and constituted a supervisory board over the entire administration of all the funds created or authorized by this article and the income therefrom. During January of each year, this board shall review the administration for the preceding year. It shall decide all uncertain or disputed points arising in the administration of the funds whenever requested to do so by a beneficiary, by a state official charged with some part of the administration of the fund, or any other interested party; and it may do so upon its own initiative. It shall be the duty of the supervisory board to do and perform all acts and things that it may deem necessary in order to cause the board and officers having direct charge of these funds to administer the same carefully and wisely in full compliance with the provisions of this article and such further legislation as may be enacted relating thereto. The clerk of the supreme court shall be ex-officio clerk of this supervisory board."

Under this provision certain questions are propounded by the Legislative Council, being:

(1) May securities held by the Montana Trust and Legacy Fund be sold or traded when the sale price is less than face value?

(2) May securities held by the Montana Trust and Legacy Fund be sold or traded when the sale price is less than the price paid for such securities?

(3) If the answer to either question (1) or (2) is "no," would it be possible to overcome such constitutional prohibition by enacting a law which permitted the sale of securities in either instance only for the purpose of investing the proceeds at a higher rate of return, and which provided that all such losses be repaid to the Trust and Legacy Fund from interest and income?

(4) If the answer to either question (1) or (2) is "no,"

would a constitutional amendment permitting the sale of securities at less than face value or purchase price be prohibited by any provisions of the Enabling Act?

(5) May the responsibility for investing the Trust and Legacy Fund be removed from the State Board of Land Commissioners by statute and vested in some other state agency?

These questions will be answered in the order presented.

*Questions (1) and (2).* The Montana Trust and Legacy Fund was created by Article XXI, Constitution of Montana, and consists of a variegated assortment of subdivisions. As envisaged by the Constitution and implementing statutes, these subdivisions may be roughly divided into six principal categories, to wit:

(1) Permanent funds created from *inter vivos* or testamentary donations from natural persons (the "state permanent revenue fund," "state permanent school fund," and "permanent revenue fund for the University of Montana"). (Section 1, Article XXI, Constitution of Montana);

(2) Funds created from donations by natural persons earmarked for particular scientific, educational, benevolent and charitable work (Section 1, Article XXI, Constitution of Montana);

(3) The public school permanent fund and other permanent funds, subject to investment, originating in land grants from the United States for the support of educational and other state institutions (Section 6, Article XXI, Constitution of Montana);

(4) Funds of political subdivisions when accepted by the state for the purposes of investment and administration (Section 7, Article XXI, Constitution of Montana);

(5) Escheated estates not transferred to the public school permanent fund (R.C.M.1947, § 79-1202); and

(6) All other public funds subject to long term investment when not by law administered by another repository (R.C.M.

1947, § 79-1202). In the interest of clarity these categories will be considered separately.

With respect to category (1) the Montana Constitution provides:

"The original amounts of all contributions for the state permanent revenue fund, for the state permanent school fund, and for the permanent revenue fund for the University of Montana, shall be added to such funds respectively and become inseparable and inviolable parts thereof." (Section 3, Article XXI, Constitution of Montana). We construe the words "The original amounts [of contributions to the permanent funds] * * * shall * * * become inseparable and inviolable parts thereof" as meaning that the principal of each of the three funds may not be reduced below the total amount of the donations from which the fund was established. For present purposes, we use the term "principal" as meaning the total cash on hand in a particular fund, plus the redemption value, upon maturity, minus accrued interest, of the investments allocable to that fund. Therefore, if the principal of a fund were to equal the amount of the donations from which it was created, and all of the investments allocable thereto were purchased at a price equal to their face value, the sale or trade of securities belonging to the fund at less than face value would not be permissible. On the other hand, if the price paid for securities were less than their face value, it would be permissible to sell the securities at less than face value, provided the sales price was not less than the purchase price. While such a sale would reduce the principal of the fund, it would not reduce the principal below the aggregate amount of the contributions from which the fund was created. In keeping with the above rule, and again assuming that the principal of a particular fund remains constant, it would not be permissible to purchase securities at a premium.

The examples in the foregoing paragraph assumed, for the purpose of illustration, that the principal of a particular fund equals the aggregate of the donations of which it is composed.

However, because of the requirement that income produced from investments allocable to the three funds under consideration be used to enhance principal (Sections 12, 13, 14, Article XXI, Constitution of Montana), the above assumption probably does not reflect the true status of the funds. Thus, the rule of inviolability of the initial donations of which the funds are composed will not, in all likelihood, preclude the sale of securities at less than their purchase price or the purchase of securities at a premium.

Inherent in the above discussion, and in the discussion to follow, is the conclusion that there is no legal objection to the exchange of investments contained in the Trust and Legacy Fund prior to their maturity date. We point this out because an argument to the contrary might be made, based upon Section 39, Article V of the Montana Constitution, which provides in relevant part:

"* * * no obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury." In our opinion, the words "person, association or corporation" embrace only nongovernmental entities, since they are commonly understood in that light, and since we can perceive no reason for the framers of the Constitution intending a different meaning to be imputed to them. Consequently, section 8, Article XXI, Constitution of Montana, becomes relevant to the question of whether securities may be sold or traded before maturity; that section provides in part:

"The Montana trust and legacy fund shall be safely and conservatively invested in public securities within the state, as far as possible, including school district, county and municipal bonds, and bonds of the state of Montana; but it may also be partly invested in bonds of the United States, bonds fully

guaranteed by the United States as to principal and interest, and federal land bank bonds. * * * The legislative assembly may provide additional regulations and limitations for all investments from the Montana trust and legacy fund. * * *" The implementing statute (R.C.M.1947, § 81-1001) does not exercise the option granted the Legislature by the Constitution to provide for investment in "bonds fully guaranteed by the United States"; thus the securities in the Trust and Legacy Fund comprise only bonds issued by governmental entities (The Federal Land Banks are instrumentalities of the Federal Government. Smith v. Kansas City Title & Trust Co., 255 U.S. 180, 41 S.Ct. 243, 65 L.Ed. 577 (1921). Accordingly, those securities are not within the scope of the prohibition of section 39, Article V, of the Constitution.

We reach a conclusion different from that of the Supreme Court of Idaho, which held that the Idaho department of public investments had no authority to sell or exchange securities purchased with permanent educational funds before their maturity date. Parsons v. Diefendorf, 53 Idaho 219, 23 P.2d 236 (1933). The Idaho decision was based upon statutes which the court construed as circumscribing the authority of the board to powers expressly conferred. The statutes involved are not akin to those of this state, but the case does stand for the principle that no implied authority exists in a state agency to transfer, before maturity, securities purchased with permanent education fund. That is a principle to which we do not subscribe, for we are aware of no cogent reason why the general authority of investment and administration of funds should not include the authority to administer investments in a manner consistent with the realities of the securities market. See 2 Scott, Trusts, § 186 (2d ed. 1956). Indeed, we should be most reluctant to announce a rule which would preclude the appropriate state authorities from being able to take advantage of a "better deal," so long as it may likewise be classed as a safe and conservative investment. Because of the constitutional

and statutory limitations respecting the type of securities which may be purchased, we do not believe our position throws the door open to dangerous speculation.

The same reasoning is applicable to the question of whether implied authority exists to sell securities in the Trust and Legacy Fund at less than face value or purchase price, as distinguished from the related question of whether they may be sold at all before maturity, when such authority is neither expressly granted nor withheld. We conclude that such implied authority does exist and, because of the absence of any inconsistent constitutional or statutory provisions respecting categories (2), (4) and (5), above, likewise conclude that securities therein may be sold at less than face value or purchase price.

█ Categories (3) and (6), however, present problems somewhat more complex because of the varying types of funds involved and the varying forms of restrictions applicable thereto. The Constitution requires that the "public school fund" (defined by Section 2, Article XI, Constitution of Montana) and the "funds of the state university and of all other state institutions of learning" (Section 12, Article XI, Constitution of Montana) "shall forever remain inviolate" (Sections 3 and 12, Article XI, Constitution of Montana). Section 3, Article XI, supra, also states that the public school fund shall be "guaranteed by the state against loss or diversion." The question presented by these provisions is whether the announced rule of inviolability of the funds is an absolute prohibition against the incurrence of a short term diminution of principal (by selling securities at less than face value or purchasing at a premium). We conclude the answer is in the negative. Bearing in mind that the purpose of the funds is to help finance this state's educational institutions with income generated therefrom, we do not believe the framers of the Constitution intended to establish a rule which could, under some circumstances, defeat that purpose. There is no doubt but that

the varying yield values of different securities render it prudent at times to take a temporary loss of principal in return for a greater realization of income (of course, the measurement of income yield must be made in light of the necessity of allocating a portion thereof to restoration of lost principal.) Therefore, we do not construe the word "inviolate" as prohibiting the sale of securities at less than purchase price or face value or the purchase thereof at a premium, provided the income gain resulting from such transactions is partially used to restore the temporary loss of principal. See Moses v. Baker, 71 N.D. 140, 299 N.W. 315 (1941); In re School Fund, 15 Neb. 684, 50 N.W.272 (1884); contra, Schelle v. Foss, 76 S.D. 620, 83 N.W.2d 847 (1957), which was based in part upon a constitutional requirement that the principal of the funds in question "may be increased but shall never be diminished." The Constitution and statutes of Montana contain no such provision.

█ While an affirmative interpretation of "inviolate" (i. e., what does it mean as distinguished from what it does not mean) is not necessary here, we observe that it means at least that principal cannot for any reason be permanently impaired, such as by direct application, in lieu of income, to educational purposes, or by diversion to non-educational purposes.

█ We are mindful of the following sentence in Section 12, Article XI, Constitution of Montana:

"The interest of said invested funds [of the state educational institutions] * * * shall be devoted to the maintenance and perpetuation of these respective institutions." In our opinion, this mandate is satisfied whether the interest is devoted directly or indirectly to the maintenance and perpetuation of those institutions. In other words, we do not believe the constitutional requirement is violated by an allocation of some interest toward restoration of a temporary loss of principal when the over-all effect of the plan is to improve the income posture of the funds. Such allocation of income is certainly, in

the long run, in the interest of maintaining and perpetuating the institutions for whose benefit the funds exist.

What we have said concerning our interpretation of the word "inviolate" is not inconsistent with our earlier discussion concerning the three funds created by Section 1, Article XXI of the Constitution; there is an obvious difference between the use of the word "inviolate" with reference to an entire fund and the following restriction, which applies to the three funds created by donations from natural persons:

*"The original amounts* * * * shall be added to such funds respectively and become inseparable and inviolable parts thereof." (Section 3, Article XXI, Constitution of Montana.) Emphasis supplied.

The foregoing encompasses so much of category (3) as includes the public school permanent fund and so much of categories (3) and (6) as include other funds of state educational institutions (funds originating in land grants and funds from all other sources except donations). With respect to all other funds in these categories, we find no provisions in the Enabling Act, Constitution, or statutes which prohibit the sale of securities at less than face value or purchase price, if the other provisions as to safety and conservatism of the investments, as hereinbefore referred to, are present.

To what has been said above, we must add one qualification, which has been saved until now in the interests of obtaining as much clarity as is permitted by the necessarily overlapping provisions within the Constitution and between the Constitution and the Enabling Act. Section 16 of the Enabling Act, grants to Montana ninety thousand acres of land "for the use and support of agricultural colleges * * * *as provided in the acts of congress making donations of lands for such purpose."* (Emphasis supplied.) The legislation referred to is a Congressional Enactment of 1862 (Chap. 130, 12 Stat. 503, July 2, 1862, 7 U.S.C. §§ 301-308) which specifically provides that the principal of funds created by the sale of the granted

land "shall forever remain unimpaired" and "undiminished." 7 U.S.C. § 304. Because of this explicit language, we conclude that securities purchased with funds created from the sale of lands granted by section 16 of the Enabling Act may not be sold for less than the purchase price or face value.

*Question (3).* The answer to this question is inherent in the above discussion. Our conclusions respecting the permissibility of selling various categories of securities for less than face value or purchase price are made on the assumption that such action will redound to the benefit of the funds and the state institutions and activities for which they were created. Indeed, such assumption is the premise upon which we conclude that implied authority to so administer the funds exists. Thus, the proposed legislation would be irrelevant insofar as concerns those categories of securities which we have concluded can be sold in the manner proposed. Moreover, because the same assumption necessarily lies in the background of our conclusion that certain other categories of securities cannot be sold for less than face value or purchase price, the proposed legislation would be ineffective to overcome the Constitutional and Enabling Act barriers which we have found to exist.

*Question (4).* With respect to securities purchased from funds generated by the sale of lands granted by section 16 of the Enabling Act, a constitutional amendment would be ineffectual to overcome the prohibition described above.

■ *Question (5).* Responsibility for investing the Trust and Legacy Fund may, by statute, be transferred from the State Board of Land Commissioners to another state agency. Section 5, Article XXI, Constitution of Montana, provides that the investment and administration of the Trust and Legacy Fund shall be vested in the agency having like authority with respect to the public school fund. However, concerning authority to invest and administer the public school fund, the Constitution is silent. While the State Board of Land Commissioners is granted authority respecting the "direction, control,

leasing and sale of the school lands of the state" (Section 4, Article XI, Constitution of Montana), we do not construe this as tantamount to having charge "of the investment and administration of the public school fund." It is true that Section 2, Article XI of the Constitution can be construed as including land, as distinguished from monies generated from the sale thereof, within the definition of the public school fund. However, it seems clear that land as such is not subject to "investment and administration" within the meaning of those words as they are used in the context of Section 5, Article XXI of the Constitution.

In conclusion it appears that the framers of our Constitution had more than one safety check in mind when in Art. XXI, § 17, hereinbefore quoted, they provided supervision by the judicial branch of our government over both the executive and legislative branches. We believe that adherence to these safeguards and the interpretations we have set forth in this opinion will adequately protect the future stability of the various funds herein mentioned.