## UNITED STATES v. FENTON et al.
### No. 2003.

District Court, D. Idaho, S. D.
April 21, 1939.

J. W. Taylor, Atty. Gen., State of Idaho, and R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn, and D. W. Thomas, Assts. Atty. Gen., for the State.

C. S. Hunter, of Boise, Idaho, for George W. Fenton, trustee.

CAVANAH, District Judge.

The United States brought this suit to condemn certain lands for a canal right of way. The State of Idaho appeared and asserted that it held three mortgages on a portion of the land condemned and that the funds represented by the mortgages are endowment funds of the State. The sum of $15,924.50 was deposited with the Clerk, by the United States to be disbursed by the Court to the parties according to their interest in the fund. The defendant Fenton, Trustee, presented an application to distribute the fund to the claims set forth in the application and to

disallow the mortgage lien claim presented by the State. The Idaho Power Company presented its claim for electrical power and light furnished, and urged that it should be paid in full out of the fund. The amount of the claim presented by the State is $21,354.70, of which $17,104.-96 consists of the permanent school endowment fund of the State and $4,249 74 is the general fund of the State. Should the mortgage lien presented by the State be held to be a first lien and to be paid first in full out of the amount to be distributed then it follows that no amount remains to be applied and distributed upon the other claims, so the pivotal question is whether the mortgage lien asserted by the State is prior to the claims of other claimants and should be paid in full.

This requires, first a consideration of the nature and status of the. funds and mortgage lien presented by the State covering the permanent endowment school fund loaned out which amounts to $17,-104.96, and which appears to be permanent endowment school trust fund claimed by the State to be protected and held inviolate and intact and reserved for school purposes only, by the Admission Act and the Constitution of the State. The provision of the Admission Act relating to School funds provides: *"Sale or lease of school lands.*—Sec. 5. All lands herein granted for educational purposes shall be disposed of only at public sale, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools. But said lands may, under such regulations as the legislature shall prescribe, be leased for periods of not more than five years, and such lands shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only." 26 Stat. 216, § 5. And the provision of the State Constitution relating to the public school fund of the State provides:

Article 9, Section 3: *"Public school fund to remain intact.*—The public school fund of the state shall forever remain inviolate and intact; the interest thereon only shall be expended in the maintenance of the schools of the state, and shall be distributed among the several counties and school districts of the state in such manner as may be prescribed by law. No part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appropriated except as herein provided. The state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed. The state shall supply all losses thereof that may in any manner occur."

Article 9, Section 4: *"Public school fund defined.*—The public school fund of the state shall consist of the proceeds of such lands as have heretofore been granted, or may hereafter be granted, to the state by the general government, known as school lands, and those granted in lieu of such; lands acquired by gift or grant from any person or corporation under any law or grant of the general government; and of all other grants of land or money made to the state from the general government for general educational purposes, or where no other special purpose is indicated in such grant; all estates or distributive shares of estates that may escheat to the state; all unclaimed shares and dividends of any corporation incorporated under the laws of the state; and all other grants, gifts, devises, or bequests made to the state for general educational purposes. * * *"

It appears clear that the provisions of the Admission Act and the Constitution of the State specify the definite meaning with respect to the manner of handling of the grant school land, and funds derived therefrom, from the National Government, and the State when in handling such funds is acting in the capacity of a Trustee for the Common schools of the State and its officials have a limited discretion which is circumscribed by the Constitutional limitation. The Admission Act requires all proceeds derived from the sale of school land, "to constitute a permanent school fund, the interest of which only shall be expended in the support of [State] schools * * * but shall be reserved for school purposes only." And the Constitution also requires that such fund "shall forever remain inviolate and intact", and such "public school fund * * shall consist of the proceeds of such lands as have heretofore been granted, or may hereafter be granted, to the state by the general government, known as school lands." Reading then these two provisions of the Admission Act and the State Constitution together, it is apparent that the

818

funds derived from the sale of public school land are protected and shall not only be reserved for public school purposes but the funds shall "forever remain inviolate and intact." We will remember that primarily it is the public school fund involved and not the manner of loaning it out or collecting it, which the State Constitution requires "shall forever .remain inviolate and intact." The expression "forever remain inviolate and intact" would not mean ten or any number of years that may be enacted into a statute, but it means forever.

The Admission Act and Section 3, Article 9, of the State Constitution were before the State Supreme Court for interpretation in a case where an attempt was had to inflict upon the fund a penalty because a note called for compound interest which made the loan contract usurious, thereby imposing a forfeiture of $500 out of the accrued interest earned and reduced the permanent school fund. The Court when in interpreting the provisions of the Statute mentioned, and the provision of the State Constitution in the case of State v. Fitzpatrick, 5 Idaho 499, 51 P. 112, 114, said:

"* * * To apply the provisions of said section 1266 to the case at bar would deplete the permanent school fund, in violation both of the act admitting Idaho as a state, and the provisions of said section 3 of article 9 of the constitution, which declares that said public school fund shall forever remain inviolate and intact, and that the interest thereon only shall be expended in the maintenance of the public schools of the state. The people, through the constitution, have thus declared for what purpose all interest on the permanent fund shall be applied. No part of it can be expended in the payment of forfeitures or penalties imposed by the statute law of the state. Any law enacted by the legislature diverting · one dollar of principal or interest of said fund to other purposes would be unconstitutional. And if the state had been expressly named as coming within the provisions of said section 1266, which it is not, said statute would be unconstitutional so far as the state is concerned. The constitution expressly prohibited the legislature from enacting a law that would divert one dollar of said funds otherwise than as provided by the constitution.

"In the face of those solemn provisions of the constitution, it is sought in this action to impose a forfeiture or penalty of $560 out of accrued interest earned by $2,000 of the permanent school fund, which interest, the constitution declares, must be distributed to the schools throughout the state; and also to reduce the permanent school fund $133.44, which fund, the constitution has declared, must be kept inviolate and intact. The legislature cannot thus do indirectly what it is prohibited from doing directly. * * *"

The effect of the Statute referred to in the decision of the State Supreme Court was to decrease and deplete the fund by imposing a penalty. The effect of the limitation statute now invoked in the present suit is also to decrease and deplete the fund. The effect of the two statutes is analogous in that the legislature cannot enact and apply the usury statute to the permanent school endowment fund which in effect decreased it, and certainly it cannot enact a limitation statute preventing a recovery which brings about the same result. The express purpose of the Admission Act and the State Constitution is to protect and hold inviolate and intact the fund from the Acts of the Legislature or Acts or failures of the officers of the State. The fund is sacred and stands out with that special protection, and any statute of limitations, whether it relates to the State or not, would not apply to actions brought by the trustee State for the foreclosure of a mortgage to secure a loan out of such funds. A parallel case in principle where the Supreme Court of the State was considering the ten year statute of limitation relating to the invoking against the state of a statute of limitation as to adverse possession of state lands is Hellerud v. Hauck, 52 Idaho 226, 228, 13 P.2d 1099, 1100, where it is said: "The general rule is to the effect that in the absence of a statute making the state subject to the statute of limitations no title by adverse possession can be acquired against the state. 2 C.J. 213; 1 R.C.L. 734, C.S. § 6595, is to the effect that the state cannot sue for the recovery of land after the same has been held for a period of ten years. There are exceptions to the rule applying the adverse possession statutes to state lands, as where the land has been actually reserved for, or dedicated to

some public use. Robinson v. Lemp, 29 Idaho 661, 161 P. 1024; Richert v. City of San Diego, 109 Cal.App. 548, 293 P. 673; Tiffany, Real Property (2d Ed.) vol. 2, p. 1975, § 510. And where the state land is school land, as in the case at bar (see Idaho Admission Bill, 26 U.S.Stat. Sess. 1, c. 656, p. 215, § 4), and the act granting said lands to the state prescribes a minimum amount per acre at which they may be disposed of by the state (Idaho Admission Bill, supra, § 11), under constitutional restrictions such as ours, providing: 'That no school lands shall be sold for less than ten dollars per acre. No law shall ever be passed by the legislature granting any privileges to persons who may have settled upon any such public lands, subsequent to the survey thereof by the general government, by which the amount to be derived by the sale, or other disposition of such lands, shall be diminished, directly or indirectly.' (Italics ours) (Idaho Constitution, Art. 9, § 8), state adverse possession statutes do not apply. Title to school grant lands cannot be acquired as against the state no matter how long they have been adversely occupied. Van Wagoner v. Whitmore, 58 Utah 418, 199 P. 670; Murtaugh v. Chicago M. & St. P. R. Co., 102 Minn. 52, 112 N.W. 860, 120 Am.St. 609; O'Brien v. Wilson, 51 Wash. 52, 97 P. 1115; Newton v. Weiler, 87 Mont. 164, 286 P. 133, 136; State v. City of Seattle, 57 Wash. 602, 107 P. 827, 27 L.R.A.,N.S., 1188."

However it may be said that the nature and effect of an Act of Congress, such as the Admission Act, involves a Federal Question and should be construed by the Courts of the United States and whatever rights acquired by the grant property by it are subject to the condition that the State do not impair the efficacy of the grant or the manner of use by the State and thereafter the State cannot enact a limitation statute that results in impairing the efficacy of the grant by barring its right and duty as trustee to recover back money loaned out of the Public School endowment fund which was derived from the sale of the permanent public school land, Northern Pacific R. Co. v. Townsend, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044.

As to the $4816.55 loan out of the revenue belonging to the state which is represented by one of the State's mortgages, securing a loan out of the general revenue of the State, Sections 55-901 and 55-903, I.C.A. There is a distinction between it and the common school fund, as the State holds the revenue as its own property and can enact such legislation applying to it as to statute of limitation as it sees fit, while as has been said the State holds the Public School fund in trust under the conditions of a National Act and the Constitution of the State and not as its property. The Supreme Court of Oklahoma explains clearly this distinction in the case of Board of Commissioners of Woods County v. State ex rel. Com'rs, 125 Okl. 287, 257 P. 778, 779, 53 A.L.R. 1128, where it is said: "There is a distinction between right accruing to the state in handling revenues belonging to it and the rights of the state arising from control of the common school fund, held in trust by the state. The revenues belonging to the state in its sovereign capacity are a part of its property, and so long as the state keeps within constitutional limitations it may deal with its property as it sees fit. On the other hand, the common school fund does not belong to the state, but the state merely holds such fund in trust under the conditions of the federal grant contained in the Enabling Act. The school funds were merely intrusted for the benefit of the common school, and the state pledged itself to hold such trust inviolate for the benefit of the schools. * * *" See In re Loan of School Fund, 18 Colo. 195, 32 P. 273.

As both the Admission Act and the State Constitution grants in trust Public school lands, the proceeds from the sale thereof naturally remains as a part of the Trust, and that the conditions are inviolable conditions which were accepted by the State. The State cannot violate these conditions nor dissipate such funds by enacting limitation acts preventing recovery of the trust funds after a certain period, for it has not the power to accept such sacred and trust funds and after loaning it out, to, by its Act, bar its recovery, and duty to recover it back upon the non-payment of the loan.

It is apparent that the amount deposited of $15,924.50 is not sufficient to satisfy the State's first mortgage liens of the school funds of $17,104.96, and therefore it becomes unnecessary to dispose of the amounts of other claimants whose claims

are subsequent to the State's first mortgage liens.

In view of the conclusions reached the mortgage lien of the State as to the $17,104.96 covering the Public school funds are not barred by any statute of limitations of the State and that the same is held to be a first and prior right of payment out of the funds now on deposit with the Clerk and that the State's other mortgage lien of the balance of $4816.55, securing the payment of the loan out of the general fund of the State, is barred by the general limitation statute of the State.