UNITED STATES of America, for the Use and Benefit of the FIRST NATIONAL BANK OF JACKSON, Jackson, MISSISSIPPI, Assignee of Standard Industries, Inc., Plaintiff,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, National Surety Corporation, a corporation, and the Aetna Casualty & Surety Company, a corporation, Defendants and Third-Party Plaintiffs,

v.

HYDE CONSTRUCTION CO., Inc., a corporation, R. W. Hyde, Jr., individually, E. E. Morgan, individually, H & F Engineering Co., Inc., a corporation, and Lacoste, Inc., a corporation, Talbert & Brown Contractors, Inc., a corporation, Universal Bridge Company, a corporation, Slade & McElroy, Inc., a corporation, Hyde-Morgan, a co-partnership, Third-Party Defendants.

UNITED STATES of America, for the Use and Benefit of the FIRST NATIONAL BANK OF JACKSON, Jackson, MISSISSIPPI, Assignee of Ideal Cement Company, Plaintiff,

v.

UNITED STATES FIDELITY & GUARANTY COMPANY, a corporation, et al. (as above named), Defendants and Third-Party Plaintiffs,

v.

HYDE CONSTRUCTION COMPANY, Inc., a corporation, et al. (as above named), Third-Party Defendants.

UNITED STATES of America, for the Use and Benefit of STANDARD INDUSTRIES, INC., a corporation, and First National Bank of Jackson, Jackson, Mississippi, a banking corporation, Plaintiffs,

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, et al. (as above named), Defendants and Third-Party Plaintiffs,

v.

HYDE CONSTRUCTION COMPANY, Inc., a corporation, et al. (as above named), Third-Party Defendants.

Civ. Nos. 5684, 5685, 5565.

United States District Court
N. D. Oklahoma.

April 16, 1965.

David H. Sanders, Sanders, McElroy & Whitten, Tulsa, Okl., and William E. Suddath, Jr., Watkins & Eager, Jackson, Miss., for plaintiffs.

Clyde J. Watts, Looney, Watts, Looney, Nichols & Johnson, Oklahoma City, Okl., for defendants and third-party plaintiffs.

Vardaman S. Dunn, Cox, Dunn & Clark, Jackson, Miss., for third-party defendants.

BOHANON, District Judge.

Three cases filed in the United States District Court for the Northern District of Oklahoma, numbered 5565, 5684 and 5685, were consolidated for trial, inasmuch as there were common questions of law and fact in each case, and arose out of financial difficulties of a contractor in the construction of a dam pursuant to a contract with the United States of

America, entered into through the United States Corps of Engineers.

In each case the United States of America sues for the use and benefit of the Use Plaintiff. In No. 5565, Standard Industries, Inc., a corporation, sues the sureties hereinafter named, and in No. 5684 The First National Bank of Jackson, Mississippi, Assignee of Standard Industries, Inc., and in No. 5685, The First National Bank of Jackson, Mississippi, as Assignee of Ideal Cement Company, sue the same sureties on the contractor's bond as required by law.

This action arises under 40 U.S.C.A. § 270a and 270b, commonly referred to as the Miller Act, and jurisdiction is conferred upon this Court under said Act.

In November, 1959, the defendant Hyde Construction Company, Inc., entered into a contract in writing with the United States of America, wherein it was agreed that said construction Company would furnish the materials and perform the work for the construction and completion of a project referred to as Keystone Dam, located within the Northern District of Oklahoma, in accordance with certain specifications, in consideration whereof the United States of America agreed to pay to Hyde Construction Company a sum in excess of Five Million Dollars.

In accordance with and as provided by the Miller Act, supra, Hyde Construction Company, as principal, and the defendants United States Fidelity & Guaranty Company, National Surety Corporation, and the Aetna Casualty and Surety Company, as sureties, executed and delivered to the United States of America their bond in the sum of Two and One-Half Million Dollars for the protection of all persons supplying labor and materials in the prosecution of the work provided for in said contract.

Each of the plaintiffs in these consolidated cases furnished materials in the prosecution of the work provided for in the contract referred to.

Hyde Construction Company, Inc., will be referred to herein as "Hyde." Standard Industries, Inc., will be referred to as "Standard," and Ideal Cement Company will be referred to as "Ideal"; The First National Bank of Jackson, Mississippi, as "Bank."

After these suits were filed by the parties against the above-named sureties, said sureties, by leave of the Court, filed and asserted, as Third-Party Plaintiffs, an action against Third-Party Defendants, to-wit: Hyde Construction Company, Inc., R. W. Hyde, Jr., E. E. Morgan, H & F Engineering Company, Inc., Lacoste, Inc., a corporation, Talbert & Brown Contractors, Inc., Universal Bridge Company, a corporation, Slade & McElroy, Inc., a corporation, Hyde-Morgan, a co-partnership composed of R. W. Hyde, Jr., and E. E. Morgan, Third-Party Defendants, as indemnitors. They executed an agreement with the sureties, although on different dates, providing:

"To indemnify the company against all loss, damages, claims, suits, costs and expenses whatever, including court costs and counsel fees at law or in equity, or liability therefor, which company may sustain or incur * * "

There were several hearings before the Court with reference to the respective claims of the parties, the last being held at Tulsa, Oklahoma, on February 23, 1965.

All of the parties plaintiff, it is admitted, furnished materials and supplies to Hyde Construction Company covered by the Miller Act and bonded by the defendant sureties.

On September 13, 1961, The First National Bank of Jackson, Mississippi, loaned to Hyde the sum of $637,418.57. This loan was guaranteed by the Third-Party Defendant E. E. Morgan. The proceeds of this loan were disbursed by The First National Bank of Jackson, Plaintiff as follows:

a. Cashier's Check No. 20214 dated September 13, 1961, in the sum of $318,-047.30, payable to Standard. This loan was secured by an assignment from Standard to the plaintiff bank covering invoices dated April 3, 1961, through July 31, 1961, in the sum of $318,047.30.

b. Cashier's Check No. 20213 dated September 13, 1961, in the amount of $319,371.21, payable to Ideal, and secured by an assignment from Ideal to plaintiff bank covering invoices dated April 28, 1961, through July 30, 1961, in the sum of $319,371.21.

On August 28, 1961, United States Fidelity & Guaranty Company, on its behalf and on behalf of the other sureties, agreed with plaintiff, The First National Bank of Jackson, Mississippi, as follows:

"First National Bank
Jackson, Mississippi

Re: Hyde Construction Co.—
Keystone Dam Project

We have been advised that among the outstanding bills charged to the above project are the following:

Ideal Cement Co.
1384—First National Bank
 Building
120 Park Avenue
Oklahoma City,
 Oklahoma $319,371.27

Standard Industries, Inc.
731 Mayo Building
Tulsa, Oklahoma $318,047.30

It is our further understanding that you have been requested by Hyde Construction Company to provide funds for the payment of the above mentioned items for which you will obtain an assignment from the respective creditors.

In the event that you secure an assignment of said claims, in whole or in part, the First National Bank will be recognized as having the same rights against the payment bond on this project on which the United States Fidelity and Guaranty Company is surety as the assignors have or would have in the absence of such payment and assignment.

This commitment is subject to, and conditioned upon, the approval of Hyde Construction Company and of R. W. Hyde, Jr., and of E. E. Morgan, to be evidenced by signatures indicated below.

Very truly yours,
UNITED STATES FIDELITY &
GUARANTY CO.
By: (Signature not legible)
 Attorney
Hyde Construction Company

By: /s/ R. W. Hyde, Jr.
 /s/ R. W. Hyde, Jr.
R. W. Hyde, Jr., individually and for all Corporations controlled by him which have indemnified the U.S.F.&G.Co.
 /s/ E. E. Morgan
 E. E. Morgan"

Thereafter and on March 15, 1962, the plaintiff bank took an assignment from Ideal for cement furnished to Hyde in the total amount of $276,797.17 covering invoices between November 2, 1961, and December 8, 1961. On March 26, 1962, plaintiff bank loaned to Hyde, guaranteed by the defendant E. E. Morgan, the sum of $276,797.17 evidenced by cashier's check payable to Hyde Construction Company, Inc., R. W. Hyde, Jr., and E. E. Morgan. The sureties refused to approve this assignment by Ideal to plaintiff. With reference to the last assignment mentioned, dated March 15, 1962, in the amount of $276,797.17, the Court is of the opinion and finds that this account was paid in full by proceeds of the loan above mentioned by plaintiff to Hyde Construction Company, Inc., R. W. Hyde, Jr., and E. E. Morgan, and that the purported assignment of the account by Ideal had been paid by the principal obligors and insofar as the defendant sureties are concerned, was a nullity.

On September 13, 1961, plaintiff bank loaned to Hyde the sum of $637,418.57, the proceeds were paid over to Ideal and Standard, in receipt for assignments from Ideal and Standard above mentioned, and which were taken by the plaintiff bank as collateral security for the payment of the loan. Prior to this loan and the subsequent transactions,

Hyde, with the approval of E. E. Morgan, assigned to the bank all the proceeds of the Keystone Dam Project.

The Court finds from the evidence that the plaintiff bank's loan of $637,418.57 to Hyde on September 13, 1961, was entered upon the bank's General Liability Ledger of Hyde, along with other loans listed on plaintiff's same General Liability Ledger, and the plaintiff bank entered all payments by Hyde upon such loans, without any allocation of payments to specific loans, and the Court finds under the evidence that the total payments made by Hyde, and applied by the bank generally, upon its liability ledger, were more than sufficient to pay in full and liquidate the loan of $637,418.57 made on September 13, 1961, to repay to the bank the Ideal and Standard accounts, and the Court specifically finds that by proper allocation of the payments made to plaintiff bank under the assignments by Ideal and Standard the claims asserted by plaintiff on account of the indebtedness to Ideal and Standard have been fully paid and satisfied and were so paid on the date of the filing of these actions.

The Court finds that the actions of the bank as relate to Causes No. 5684 and 5685, filed July 5, 1963, show that the last material delivered by Standard and Ideal covered by assignments to the bank was July 31, 1961, and the time for the filing of such actions expired July 31, 1962, 40 U.S.C. § 270b.

 The bank, as assignee of all the proceeds from the Keystone Dam Project, and as Assignee of the Ideal and Standard account in the total amount of $637,-418.57, the validity of which was based upon the letter of the sureties permitting the assignment of the accounts and accepting the assignments as collateral for loan in the same amount, may legally be considered in the position of a trustee, inasmuch as all parties relied upon the bank to collect the proceeds and to pay the notes and discharge the sureties, and considering all of the circumstances it had a duty to apply the proceeds from the assigned accounts from Standard and Ideal to the note which Hyde and Morgan executed to the bank to receive the money to pay the accounts of Standard and Ideal. As a matter of fact, the bank issued its cashier's checks to these two assignors in payment of the assigned accounts. The record shows that there were many transactions between Hyde Construction Company and E. E. Morgan with the bank, aside from the particular contract in question, and it appears to this Court, and the Court finds, that the bank made a studied effort prior to filing of these actions to channel all the funds received from the bonded contract to other indebtedness owed to the bank by Hyde and Morgan, with an attempt to saddle off onto the sureties in this case the liabilities of those parties. As further evidence of the bank's eagerness to carry out this plan, the evidence shows that the bank, after being advised by the sureties that the statute of limitations had run upon their claim, attempted to take advantage of a purchase on February 7, 1963, from Ideal, of 120 barrels of cement, with the obvious intent of attempting to extend the time for filing an action under the Miller Act by reason of such purchase. This purchase amounted to $515.15 and was not covered by the assignment from Ideal to the bank, and the purchase price thereof was paid directly from Hyde to Ideal. The evidence further shows that E. E. Morgan, who was then in charge of completion of the contract with United States of America, told the manager in charge of the construction work to order this cement from Ideal. The manager testified under oath that under normal procedure for such a small quantity of cement he would have purchased it locally had he not been otherwise ordered by Mr. Morgan.

The Miller Act, Section 270b, provides:

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract * * * who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last labor was done or performed by him

or material was furnished or supplied by him * * * shall have the right to sue on such payment bond for the amount * * * unpaid at the time of institution of such suit."

And

"(b) Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing * * * but no suit shall be commenced after the expiration of one year after the day on which the. last of the labor was performed or material was supplied by him. * * * "

■ Clearly the suits by the bank on its assignments from both Standard and Ideal were not commenced before the expiration of one year after the day on which the last material was supplied. Each of the assignments constituted a separate chose in action, and the bank as assignee if permitted to prevail at all was required by the statute to bring its action within one year after the date of the last material furnished by its assignors as covered by the separate assignments.

■ The Court finds that this purchase was not made in good faith and was no part of the assigned contract sued upon and did not have the effect of extending the time to bring suit under the Miller Act, supra. See United States for Use and Benefit of General Electric Company v. Southern Construction Company, et al., 229 F.Supp. 873 (W.D.La.1964); United States for Use of Weithman v. Buckeye Union Casualty Co., D.C., 207 F.Supp. 552.

In the cases before the Court by the Bank, that is, the Standard and Ideal cases, it is not making a claim for any item which was furnished within one year next preceding the filing of its actions. The only item which could possibly extend the time for the filing of suit in the Ideal case is the small amount of the invoice dated February 7, 1963, which was paid by Hyde Construction Company to Ideal, and no claim is made either by Ideal or the Bank for this purchase. Likewise, no claim is made by the Bank as assignee of Standard Industries for materials furnished within one year next preceding the commencement of the action. The Bank's claims under the Standard and Ideal assignments against the sureties are barred by the provisions of 40 U.S.C.A. § 270b as amended.

Next to be considered is the claim of United States of America, for the Use and Benefit of Standard Industries, Inc., versus the sureties involved here and their third-party complaint against the third-party defendants, all heretofore named. At the hearing before the Court on January 11, 1965, it appeared that Standard Industries, Inc., was entitled on its separate claim to a judgment in the amount prayed for, to-wit, the sum of $57,392.30, and the Court at that hearing stated that such judgment would be entered. However, before such judgment was entered or any findings made, the sureties filed a motion to re-open and to permit the introduction of evidence. This motion was granted, and the matter came on for hearing upon the particular claim set forth in Case No. 5565 on February 23, 1965. At this hearing, two witnesses testified, one of them being Mr. David Sanders, the present attorney for plaintiffs, and Mr. Horace Ballaine, a former attorney for the plaintiff Standard. At this hearing it developed that in June or early July of 1964, Mr. Sanders, the then attorney for the First National Bank of Jackson, Mississippi, approached Mr. Ballaine, then attorney for Standard Industries, Inc., in its action against defendants (before consolidation), concerning a settlement of Standard Industries claim against defendant sureties. Mr. Sanders offered to pay Standard Industries $49,000 in settlement of this claim, with the proviso that from any judgment which Standard Industries obtained against the defendant sureties, Standard Industries would receive the first $1,000, and the balance would be paid to the bank. At the time of these negotiations, Standard Industries was in need of funds; Hyde had a

cross-claim against Standard Industries in the approximate amount of $23,000. The evidence further revealed that attorney Sanders would pay Standard Industries $49,000 in cashier's checks. This was done with two such checks purchased at the National Bank of Tulsa, one for $40,000 and another for $9,000. It was then understood that Standard Industries would appoint attorney Sanders as its irrevocable attorney to prosecute its claim against Defendant sureties. This was also accomplished. After this Mr. Sanders filed an Amended Complaint wherein the claim of Standard Industries, Inc., a corporation, and First National Bank of Jackson, Mississippi, were joined as plaintiffs. It was admitted by Mr. Sanders that this was done for the purpose, or in an attempt, to avoid the question of the statute of limitations on the claim of the First National Bank of Jackson, Mississippi, as Assignee of Standard Industries claim, heretofore mentioned. He testified that he "conceived the idea that if he reconsolidated the claims of Standard Industries under the Miller Act, Standard would be entitled to recover without any defense, and that a loan arrangement would be worked out so that I could get this legal idea across." Cashier's checks in the amount of $49,000 were delivered to Mr. Ballaine, the then attorney for Standard Industries, and without recourse. Mr. Sanders testified that the agreement was as stated in the Traveler's Insurance Company printed loan receipt form, and that he and Mr. Ballaine in substance agreed that this form would constitute the agreement between them. No writing of any kind was executed by any of the parties. Mr. Sanders received the $49,000 from the First National Bank in Jackson, and he in turn obtained cashier's checks for the same from the First National Bank in Tulsa, payable to himself, which he endorsed over to Standard Industries and its attorney, Mr. Ballaine. At the time of the above transactions or transaction, Mr. Sanders did not know the source of the $49,000 except that it came from the First National Bank of Jackson, Mississippi. Mr. Sanders learned before the last hearing, however, that the money furnished him by the bank was obtained by it from a loan made by Hyde Construction Company, Inc., and endorsed by R. W. Hyde, Jr., and E. E. Morgan. Neither the bank nor anyone involved had any recourse against Standard Industries for the recovery of the $49,000. No assignment was made of Standard Industries' claim to the bank, and no release was obtained from Standard Industries. The defendant sureties did not agree to an assignment to the bank of the claim or the arrangement above outlined.

■ The purported loan receipt agreement between counsel for the First National Bank of Jackson and counsel for Standard Industries, Inc., was in law and in equity a settlement and payment of the account by Hyde Construction Company, Inc., the principal debtor, and R. W. Hyde, Jr., and E. E. Morgan, indemnitors.

■ The purported loan from the bank to Standard Industries was but a sham and guise. There was no loan to Standard Industries in any sense because Standard Industries, under the purported agreement, was under no obligation to repay the sum so received. In the absence of an agreement to repay the $49,000 by Standard Industries, this sum could not in any sense of the word be considered as a loan. A loan, from one person or party to another, in law, raises a legal obligation to repay the same, and if there is no obligation to repay, then there is not a loan from a legal standpoint, regardless of the name used or applied to the transaction.

There was no evidence introduced before the Court that Hyde was entitled to recover, over and above its cross-complaint, a sum in excess of $49,000. As a matter of fact, there is no evidence that it was entitled to receive $49,000.

Under the circumstances here presented, the Court concludes that there has been a settlement of this claim between the principal, Hyde Construction Com-

pany, and the indemnitors, R. W. Hyde, Jr., and E. E. Morgan, of the claim of Standard Industries, and therefore no recovery will be allowed on this claim, and judgment will be entered in favor of the defendant sureties.

■ The sureties, in their pleadings, ask for attorneys' fees and expenses in these cases, and attorneys for the plaintiffs make claim for attorneys' fees, costs and expenses. Since the Court will enter judgment denying the claims of the plaintiffs, its attorney or attorneys are not entitled to receive attorneys' fees; no proof was offered as to the value of the attorneys' services for the sureties, nor was any evidence offered showing any expenses or expenditures which they may be entitled to receive under their bond applications and bonds. Consequently, none of these alleged expenses will be allowed.

Costs in each of these three cases, before and after consolidation, are taxed against The First National Bank of Jackson, Mississippi.

Judgment will be entered accordingly.