458 P.2d 213

D. F. ENGELKING, Plaintiff,

v.

The INVESTMENT BOARD of the State
of Idaho, Defendant.

No. 10444.

Supreme Court of Idaho.

June 30, 1969.

Rehearing Denied Aug. 18, 1969.

218

Roberts & Poole, Boise, for plaintiff.

Parry, Robertson, Daly & Larson, by Thomas G. Nelson, Twin Falls, and Wallis & Churchill, Boise, amici curiae.

Robert M. Robson, Atty. Gen., and Richard H. Greener, Asst. Atty. Gen., Boise, for defendant.

McQUADE, Justice.

This case arises from an original proceeding in this Court under its original jurisdiction to issue writs of prohibition.[1] Thus there are no disputed issues of fact. The basic question of law presented is whether or not S.B. 1277 (S.L.1969), which would permit the Idaho Endowment Fund Investment Board to invest permanent endowment fund assets in bonds, notes, convertible debt securities, and common or preferred stock of private corporations, is unconstitutional.

The facts relevant to this main issue and several subsidiary issues are as follows. In 1863 Congress enacted the Organic Act of the Territory of Idaho, 12 Stat. 808 (1863). That act provided in § 14:

> "*And be it further enacted*, That when the lands in the said Territory shall be surveyed, under the direction of the government of the United States, preparatory to bringing the same into market, sections numbered sixteen and thirty-six in each township in said territory shall be, and the same are hereby, reserved for the purpose of being applied to schools in said Territory, and in the states and

1. Idaho Const. art. 5, § 9; I.C. §§ 1–202, 1–203; I.C. §§ 7–401, 7–402, 7–403, 7–404.

territories hereafter to be erected out of the same."

Then in 1890 Congress enacted the Idaho Admission Bill, 26 Stat. 215 (1890), as amended 56 Stat. 48 (1942). That act provided in part:

"Sec. 4. That sections numbered sixteen and thirty-six in every township of said State, and where such sections, or any parts thereof, have been sold or otherwise disposed of by or under the authority of any act of Congress, other lands equivalent thereto, in legal sub-divisions of not less than one quarter section, and as contiguous as may be to the section in lieu of which the same is taken, are hereby granted to said State for the support of common schools, such indemnity lands to be selected within said State in such manner as the legislature may provide, with the approval of the Secretary of the Interior.

"Sec. 5. That all lands herein granted for educational purposes shall be disposed of only at public sale, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools. But said lands may, under such regulations as the legislature shall prescribe, be leased for periods of not more than five years, and such lands shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only."

The proceeds of these lands form a part of the public school fund of Idaho.[2] Plaintiff D. F. Engelking, as State Superintendent of Public Instruction and ex officio a member of the State Board of Education, is charged by law with the responsibility of enforcing the rules and regulations of the Board of Education concerning schools and institutions under its control,[3] and thus, is a person beneficially interested in the administration of school fund assets.

Until 1968, the public school fund, which forms part of the permanent endowment funds of the State, could be placed only in a limited group of investments. In this respect, Idaho Const. art. 9 § 11 provided:

*"Loaning permanent endowment funds.*—The permanent endowment funds other than funds arising from the disposition of university lands belonging to the state, shall be loaned on United States, state, county, city, village or school district bonds or state warrants, under such regulations as the legislature may provide."

However, on November 8, 1968, the people of the State of Idaho approved an amendment to Idaho Const. art. 9 § 11, which changed that provision to provide as follows:

"The permanent endowment funds other than funds arising from the disposition of university lands belonging to the state shall be loaned on United States, state, county, city, village or school district bonds or state warrants, and on such other investments as may be permitted by law."

The Fortieth Legislature acted to implement this amendment by passing S.B. 1277, which was approved by the governor on March 25, 1969. That act *inter alia* repealed Chapter 7, Title 57, Idaho Code, and established an Investment Board which was given authority to determine the investment policy for endowment fund assets. The portion of the act which expands the number of investment vehicles available for the permanent endowment funds pursuant to the constitutional amendment is as follows:

"Section 9. The board or its trustees may, and they are hereby authorized to, invest the permanent endowment funds of the state of Idaho in the following

---

2. Idaho Const. art. 9, § 4; I.C. § 33–902.

3. Idaho Const. art. 9, § 2; I.C. § 33–102; I.C. § 67–1504.

manner and in the following investments or securities and none others:

\* \* \* \* \* \*

"(3) Bonds, notes, or other obligations of the United States or those guaranteed by, or for which the credit of, the United States is pledged for payment of the principal and interest or dividends thereof.

"(4) Bonds, notes, or other obligations of the state of Idaho and its political subdivisions, or bonds, notes, and other obligations of other states and their political subdivisions, provided such bonds, notes or other obligations or the issuing agency for other than the state of Idaho and its political subdivisions have an AAA rating or higher by a commonly known rating service.

"(5) Bonds or notes of any corporation organized, controlled and operating within the United States which have an A rating or higher by a commonly known rating service.

"(6) Corporate obligations designated as corporate convertible debt securities, but within the limits hereinafter provided for the investment of stock, upon conversion.

"(7) Obligations secured by mortgages constituting a first lien upon real property in the state of Idaho which are fully insured or guaranteed as to the payment of the principal by the government of the United States or any agency thereof.

"(8) Common or preferred stocks of corporations, provided that no more than twenty-five per cent (25%) of the principal amount of any one permanent endowment fund may be invested in common or preferred stock of corporations in the first year following the enactment hereof. Thereafter, the per cent of the principal amount of the fund invested in common or preferred stock of corporations may be increased at the direction of the investment board by no more than ten per cent (10%) in any one calendar year except that at no time shall the per cent of the principal amount of any endowment fund invested in common or preferred stock of corporations exceed fifty per cent (50%). In computing the per cent of the principal amount of the fund which may be invested in common or preferred stock of corporations, the board shall consider the cost of common or preferred stocks which the fund is holding at the time of computation and not the current market value thereof."

On April 11, 1969, the Endowment Fund Investment Board held its initial meeting and determined to invest the permanent endowment fund assets in accordance with Section 9 of S.B. 1277.

Plaintiff Engelking thereafter filed a petition for an alternative writ of prohibition to prohibit the Investment Board from making those investments with public school endowment fund assets. This Court granted the alternative writ of prohibition on May 1, 1969. The question now is whether the prohibition should be made absolute.

Plaintiff Engelking first broadly challenges S.B. 1277 on the ground that its provisions allow state investment in the private sector of the economy contrary to Idaho Const. art. 8, § 2. It should be noted that this attack, if successful would invalidate all proposed investment by the Endowment Fund Investment Board (Board) in securities of private corporations, not only those made with public school fund assets. Idaho Const. art. 8, § 2 provides in pertinent part:

*"Loan of state's credit prohibited*—Holding *stock in corporation prohibited*— \* \* \* .—The credit of the state shall not, in any manner, be given, or loaned to, or in aid of any individual, association, municipality or corporation; nor shall the state directly or indirectly, become a stockholder in any association or corporation \* \* \*."

This provision was part of the original constitution adopted in 1890 and was amended to its present form in 1920.

Plaintiff asserts that, as against this provision, S.B. 1277 must fall. How-

ever, that assertion fails to consider the fact that S.B. 1277 was authorized by the 1968 amendment to the Idaho Const. art. 9, § 11. Thus, the real conflict, if any, is between two constitutional provisions, one original and general and the other a recent and specific amendment, not between a statute and a constitutional provision. This Court has held that "[t]he general rules of statutory construction apply to the amendment of a constitution"[4] as well as to constitutional provisions generally.[5] In this respect, "[t]he fundamental object to be sought in construing a constitutional provision is to ascertain the intent of the framers[,] and the provision must be construed or interpreted in such manner as to fulfill the intent of the people, never to defeat it."[6] One method of determining constitutional or legislative intent which has both ancient heritage and modern relevance was succinctly stated by Lord Coke:

"* * * that for the sure and true interpretation of all statutes in general * * * four things are to be discerned and considered:—

1st. What was the common law before the making of the Act.

2nd. What was the mischief and defect for which the common law did not provide.

3rd. What remedy the Parliament both resolved and appointed to cure the disease of the commonwealth.

and, 4th. The true reason of the remedy; and then the office of all the Judges is always to make such construction as shall suppress the mischief, and advance the remedy * * * and to add force and life to the cure and remedy, according to the true intent of the makers of the Act, *pro bono publico.*"[7]

Moreover, this Court has often held that provisions apparently in conflict must be reconciled if at all possible.[8] Only when an irreconcilable conflict presents itself will the court seek recourse in the principles that subsequent provisions prevail over prior provisions[9] or that specific provisions prevail over general provisions,[10] for this involves partial repeal by implication.[11] This doctrine generally is not favored.[12]

In the present case, the apparent conflict occurs between Idaho Const. art. 8, § 2, and Idaho Const. art. 9, § 11, as amended in 1968. We believe that the loaning of credit clause of Idaho Const. art. 8, § 2, may be reconciled with the amendment to Idaho Const. art. 9, § 11, precisely because it prohibits only loaning of the State's credit. Idaho Const. art. 8, § 2, does not prohibit the loaning of State funds. The

4. Idaho Mutual Benefit Assn. v. Robison, 65 Idaho 793 at 800, 154 P.2d 156 at 159 (1944), and numerous cases there cited.

5. Lewis v. Woodall, 72 Idaho 16 at 18, 236 P.2d 91 at 93 (1951); Keenan v. Price, 68 Idaho 423 at 437, 195 P.2d 662 at 670 (1948); Higer v. Hansen, 67 Idaho 45 at 52, 170 P.2d 411 at 414–415 (1946); Phipps v. Boise Street Car Co., 61 Idaho 740 at 747, 107 P.2d 148 at 151 (1940).

6. Haile v. Foote, 90 Idaho 261 at 270, 409 P.2d 409 at 414 (1965); Higer v. Hansen, n. 5, supra, 67 Idaho at p. 63, 170 P.2d 422; see 16 Am.Jur.2d Constitutional Law § 64 (1964).

7. Heydon's Case, 3 Co.Rep. 7a at 7b, 76 Eng.Rep. (Full Reprint) 637 at 638 (1584).

8. See, e. g., Christensen v. West, 92 Idaho 87, 437 P.2d 359 (1968).

9. See, e. g., Employment Security Agency v. Joint Class "A" School Dist., 88 Idaho 384, 400 P.2d 377 (1965); Lloyd Corporation v. Bannock County, 53 Idaho 478, 25 P.2d 217 (1933).

10. See, e. g., State v. Roderick, 85 Idaho 80, 375 P.2d 1005 (1962); Koelsch v. Girard, 54 Idaho 452, 33 P.2d 816 (1934); Budge v. Gifford, 26 Idaho 521 at 530, 144 P. 333 at 335 (1914).

11. See generally, Sutherland, Statutory Construction §§ 5201–5211 (Horack ed. 1943).

12. See, e. g., State v. Davidson, 78 Idaho 553, 309 P.2d 211 (1957); John Hancock Mut. Life Ins. Co. v. Haworth, 68 Idaho 185, 191 P.2d 359 (1948); State v. Martinez, 43 Idaho 180, 250 P. 239 (1926); 16 C.J.S. Constitutional Law § 42b (1956).

word "credit" as used in this provision implies the imposition of some new financial liability upon the State which in effect results in the creation of State debt for the benefit of private enterprises. This was the evil intended to be remedied by Idaho Const. art. 8, § 2, and similar provisions in other state constitutions.[13] Yet that particular evil is not presented by the investment of existing funds of the State, for no new State debts are created by such action.

■■■ Moreover, not only is the State action proposed by S.B. 1277 not a loaning of credit but also such action is not in aid of private associations in the sense intended to be prohibited by the constitutional provision. The loaning of endowment fund assets envisioned by S.B. 1277 involves an effort to aid the State by increasing the earnings of endowment funds. That is its predominant and public purpose. The credit clause of Idaho Const. art. 8, § 2, is intended to preclude only State action which principally aims to aid various private schemes.[14] As the parties have noted, the loaning of funds by the State is always presumably of some benefit to the recipient of the funds. However, where such a benefit is merely an incidental consequence of efforts to effectuate a broad public purpose, then it cannot be said to violate the credit clause of Idaho Const. art. 8, § 2. Thus, because the loaning of endowment fund assets envisioned by the amendment to Idaho Const. art. 9, § 11, and S.B. 1277 constitutes neither a lending of "credit" nor a lending of credit in "aid" of private associations, we find no conflict between those provisions and the credit clause of Idaho Const. art. 8, § 2.

■■■ However, the stockholder clause of the Idaho Const. art. 8, § 2, presents a separate problem. That provision prohibits the State from directly or indirectly becoming a stockholder in any association or corporation.[15] Yet Sections 9(6) and 9(8) of S.B. 1277 authorize the Board to purchase corporate convertible debt securities and common and preferred stocks of corporations. We believe that the apparent conflict between the 1968 amendment to Idaho Const. art. 9, § 11, and the stockholder clause of Idaho Const. art. 8, § 2, may be avoided. Idaho Const. art. 9, § 11 originally authorized the "loaning" of permanent endowment funds "on" governmental bonds and state warrants. The 1968 amendment to this provision simply added the phrase "and on such other investments as may be permitted by law." The operative verb in Idaho Const. art. 9, § 11, as amended, is still "shall be loaned." That fact is emphasized by the second use in the amendment of the preposition "on." We believe that the amendment expands the number of investment vehicles available for endowment fund assets, but that the expansion is limited to other types of debt securities only.

This interpretation is in accord with Senate Joint Resolution No. 4 which stated the question submitted to the voters as follows:

"Shall Section 11 of of Article IX of the Constitution of the state of Idaho be amended to provide that permanent endowment funds other than funds arising from the disposition of university lands belonging to the state, which now shall be loaned on United States, state, county,

---

13. Hansen v. Independent School Dist. No. 1, 61 Idaho 109, 98 P.2d 959 (1939); Suppiger v. Enking, 60 Idaho 292, 91 P.2d 362 (1939); State Water Conservation Bd. of Idaho v. Enking, 56 Idaho 722, 58 P.2d 779 (1936); see also, Johns Hopkins University v. Williams, 199 Md. 382, 86 A.2d 892 (1952); Annotation, 152 A.L.R. 495 (1944).

14. Davis v. Moon, 77 Idaho 146, 289 P.2d 614, (1955); Suppiger v. Enking, n. 13, supra.

15. Cf. School Dist. No. 8 in Twin Falls County v. Twin Falls [Etc.] Ins. Co., 30 Idaho 400, 164 P. 1174 (1917); Sprague v. Straub, Or., 451 P.2d 49 (1969); Almond v. Day, 197 Va. 782, 91 S.E.2d 660 (1956); Michigan Savings & Loan League v. Municipal Finance Commission, 347 Mich. 311, 79 N.W.2d 590 (1956).

city, village or school district bonds or state warrants under regulations the legislature may provide, may also be *loaned* on such other investments as may be permitted by law?" (Emphasis added). It is this question which the people answered affirmatively, thus authorizing legislative action to "loan" endowment fund assets "on * * * other investments." Of course, the attorney general's statement of purpose was to the effect that the funds could "be invested in the private sector of the economy as well as in government bonds and state warrants." The question submitted to the voters was somewhat ambiguous in its reference to a "loan" on an "investment." The attorney general's statement was ambiguous because an "investment" may include the purchase of both debt securities and equity stock and could have been intended to refer only to the former.

In this situation we believe the important word "loan" must not be loosely construed to include all types of "investment." Instead, the word "loan," as used in Idaho Const. art. 9, § 11 and as extended in scope by the 1968 amendment, must carry the meaning that there must be a guarantee of full repayment of principal as well as interest. There must be an unconditional promise to repay the principal sum originally lent.[16] The purchase of stock thus is not authorized by the 1968 amendment to Idaho Const. art. 9, § 11, for the purchaser of stock obtains no guarantee of full repayment of invested capital. Stock purchases offer the possibility of capital gain, but so also are they subject to the risk of capital loss. Convertible bonds may be purchased, but the conversion privilege may not be exercised. Therefore, we hold that Sections 9(6) and 9(8) of S.B. 1277 are unconstitutional under Idaho Const. art. 9, § 11, even as amended, but that Sections 9(3), 9(4), 9(5) and 9(7) are constitutional as involving only "loans" in which repay-

ment of principal can be guaranteed. Of course, the validity of Section 9(1) and 9(2) is not challenged. Because we reach this result, the apparent conflict between Idaho Const. art. 9, § 11, as amended, and the stockholder clause of Idaho Const. art. 8, § 2, is avoided and need not be resolved. If the amendment to Idaho Const. art. 9, § 11, had expressly permitted purchase of stock as well as loans, a different problem would have been presented.

The Board also has argued that the assets of the public school fund do not at all constitute the credit of the State for purposes of Idaho Const. art. 8, § 2. Its contention, in contrast to that of *amicus curiae*, is based upon the theory that the public school fund consists of the proceeds of lands given in trust by the federal government as settlor to the State of Idaho as trustee for the benefit of a common school system, the beneficiary of the trust. Under this theory, the State holds only legal title to the assets, not the beneficial ownership. Therefore, whatever the State does with these assets, its own credit is not actually loaned. Plaintiff, on the other hand, has argued that we must look through the formalities of trust law and find that the public school system is in fact part of the sovereign State and that therefore there must be a merger in the State of legal and equitable titles to the fund and the State's credit is indeed loaned. Along these same lines, plaintiff has argued that the State would own stock contrary to Idaho Const. art. 8, § 2, simply because it would be the registered owner of such stock. The Board counters with the fact that all stocks purchased by it will be held in the name not of the State but of the trustee.

Because we have decided that the amendment to Idaho Const. art. 9, § 11 itself does not authorize purchases of stock, we do not rely upon these just-mentioned arguments of the Board. These arguments have the additional weaknesses of imprecision and

16. United States for Use and Benefit of First National Bank of Jackson, Miss. v. United States Fidelity & Guaranty Co., 240 F.Supp. 316 (D.Okla.1965); Isaacson v. House, 216 Ga. 698, 119 S.E.2d 113 (1961); 54 C.J.S. note 94, pp. 656–657, (1948).

technicality. The trust theory, if accepted, would validate S.B. 1277 only as applied to the investment of public school fund assets, and then only that part of the public school fund assets representing the proceeds of federal lands. However, the permanent endowment funds include funds other than the public school fund just as the public school fund contains assets other than those given to it in trust by the federal government. As applied to these latter assets, S.B. 1277 would still be invalid. Both this trust theory and the argument that we must, for constitutional purposes, accept the registered owner of stock as the true owner of the stock suffer as well from undue technicality, and we hesitate to rely upon them in the decision of this substantial constitutional question.

■ Finally, plaintiff argues that Section 11 of S.B. 1277, which provides for adjustments of net income and losses among the various permanent endowment funds, is contrary to Idaho Const. art. 9, § 3. That constitutional provision states:

*"Public school fund to remain intact.—* The public school fund of the state shall forever remain inviolate and intact; the interest thereon only shall be expended in the maintenance of the schools of the state, and shall be distributed among the several counties and school districts of the state in such manner as may be prescribed by law. No part of this fund, principal or interest, shall ever be transferred to any other fund, or used or appropriated except as herein provided. The state treasurer shall be the custodian of this fund, and the same shall be securely and profitably invested as may be by law directed. The state shall supply all losses thereof that may in any manner occur."

Section 11 of S.B. 1277 expressly excepts from the operation of the Idaho Uniform Principal and Income Act otherwise made applicable to investments of permanent endowment fund assets "[such distributions] as * * * may be in conflict with section 3 of article 9 of the Idaho Constitution, as it applies to the public school fund." It is not entirely clear, however, whether this exception embodied in the first sentence of Section 11 of S.B. 1277 was intended also to except the public school fund from the operation of the last sentence of Section 11 of S.B. 1277. The latter sentence provides:

"All net income or net losses from the investments or securities shall be distributed to each participating fund in the same ratio as each fund's average daily balance bears to the total average daily balance of all participating funds."

To the extent that this language would require income of the public school fund to be distributed to other funds and losses of other funds to be distributed to the public school fund, and to the extent that such distributions might be made despite the first sentence of Section 11, we hold that the last sentence of Section 11 is unconstitutional as applied to the public school fund. We must give full effect to the terms of Idaho Const. art. 9, § 3, so that the fund will not in any manner be subject to depletion of principal or interest. In this regard, we follow the many cases involving this or similar funds which have protected them from any depletion.[17]

Paragraphs 1, 2, 3 and 5 of the alternative writ of prohibition are vacated. Paragraphs 4 and 6 of the alternative writ of prohibition are made absolute.

The defendant is permanently prohibited and restrained from commingling the permanent school endowment fund with any

17. United States v. Fenton, 27 F.Supp. 816 (D.Idaho 1939); State v. Peterson, 61 Idaho 50, 97 P.2d 603 (1939); Parsons v. Diefendorf, 53 Idaho 219, 23 P.2d 236, (1933); State v. Fitzpatrick, 5 Idaho 499, 51 P. 112 (1897); In re Montana Trust & Legacy Fund, 143 Mont. 218, 388 P.2d 366 (1964); Schelle v. Foss, 76 S.D. 620, 83 N.W.2d 847 (1957); Melgard v. Eagleson, 31 Idaho 411, 172 P. 655 (1918); State ex rel. Moon v. Jonasson, 78 Idaho 205, 299 P.2d 755 (1956); State ex rel. Sprague v. Straub, 240 Or. 272, 400 P.2d 229, 401 P.2d 29 (1965).

other fund, or distributing the income from the permanent school endowment fund investments to any other fund, as provided to be done in Section 11 of S.B. 1277.

No costs allowed.

McFADDEN, C. J., DONALDSON, J., and LODGE and WARD, D. JJ., concur.

### On Rehearing

McQUADE, Justice.

The defendant on petition for rehearing queries if the Court precluded the purchase of corporate convertible debentures which are not subsequently converted to corporate stock. The Court in the opinion analyzed: "Stock purchases offer the possibility of capital gain, but so also are they subject to the risk of capital loss. Convertible bonds may be purchased, but the conversion privilege may not be exercised. Therefore, we hold that Sections 9(6) and 9(8) of S.B. 1277 are unconstitutional * * *." Section 9(6) was specifically denoted as violative of Idaho Const. art. 9, sec. 11, as amended, because of the privilege of convertibility of the bonds authorized therein.