Mr. John C. Wolfe Chief Assistant City Attorney City of St. Petersburg Post Office Box 2842 St. Petersburg, Florida 33731
Dear Mr. Wolfe:
This is in response to your request for an opinion on the following question:
 MAY THE CITY OF ST. PETERSBURG SELL SURPLUS REAL ESTATE UNDER AN AGREEMENT FOR DEED OR UNDER A CONTRACT WHEREBY THE CITY WOULD TAKE BACK AND HOLD A MORTGAGE?
According to your letter the City of St. Petersburg has surplus real estate that it wishes to sell. In light of today's market conditions, however, you state that it would be helpful if the city could take back a mortgage on some of this real estate. You are concerned that the taking back of a mortgage by a municipality might be construed as a loan of the city's credit to a private entity within the meaning of s 10, Art. VII, State Const., and have therefore requested my opinion on this matter. This opinion is thus limited to a consideration as to whether the provisions of s 10, Art. VII, State Const., prohibit the city from taking back a purchase money mortgage; no opinion is expressed herein regarding any city charter provision controlling the sale (or the procedure for sale) or municipal property.
Under the provisions of s 2(b), Art. VIII, State Const., as implemented by Ch. 166, F.S., the Municipal Home Rule Powers Act, a municipality possesses the governmental, corporate and proprietary powers to enable it to conduct municipal government, perform municipal functions and render municipal services and may exercise any power for municipal purposes, except when expressly prohibited by law. See, s 166.021(1), F.S.; and see, s 166.021(3), F.S., stating that the legislative body of each municipality has the power to enact legislation concerning any subject matter upon which the state Legislature may act with the exception of certain enumerated subjects, including, inter alia, any subject expressly prohibited by the Constitution. Section 10, Art. VII, State Const., however, provides in pertinent part:
 Neither the state nor any . . . municipality . . . or agency of any of them, shall become a joint owner with, or stockholder of, or give, lend or use its taxing power or credit to aid any corporation, association, partnership or person . . . .
 Many of the cases relating to s 10, Art. VII, State Const. (or its predecessor, s 10, Art. IX, State Const. 1885), have stated that the purpose or function of this constitutional provision is `to keep the State out of private business; to insulate State funds against loans to individual corporations or associations and to withhold the State's credit from entanglement in private enterprise.' See, Dade County, Board of Public Instruction v. Michigan Mutual Liability Co., 174 So.2d 3, 6 (Fla. 1965); and Bailey v. City of Tampa, 111 So. 119, 120 (Fla. 1926), wherein the Court stated the reason for s 10, Art. IX, State Const. 1885:
 [D]uring the years immediately preceding its adoption, the state and many of its counties, cities, and towns had by legislative enactment become stockholders or bondholders in, and had in other ways loaned their credit to, and had become interested in the organization and operation of, railroads, banks, and other commercial institutions. Many of these institutions were poorly managed, and either failed or became heavily involved, and, as a result, the state, counties, and cities interested in them became responsible for their debts and other obligations. These obligations fell ultimately on the taxpayers. Hence the amendment, the essence of which was to restrict the activities and functions of the state, county, and municipality to that of government, and forbid their engaging directly or indirectly in commercial enterprises for profit.
Cf., 64 C.J.S. Municipal Corporations s 1870b (constitutional provisions prohibiting municipalities from aiding private corporations should be considered with respect to the evils they were intended to correct).
In considering whether the public credit has been loaned, used or given, the courts have generally stated that the public must either be directly or contingently liable to pay something to somebody. See, e.g., Wald v. Sarasota City Health Facilities,360 So.2d 763, 768 (Fla. 1978) (the word `credit' as used in s 10, Art. VII, State Const., implies the imposition of some financial liability upon the state or political subdivision which results in the creation of a state or political subdivision debt for the benefit of private enterprise); Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304, 309 (Fla. 1971) (neither full faith and credit nor taxing power of state or political subdivision pledged to payment of revenue bonds where purchasers of such bonds may not look to any legal or moral obligation on part of the state, county or authority to pay any portion of the bonds). And see, State v. Housing Finance Authority of Polk County, 376 So.2d 1158 (Fla. 1979), wherein the Court upheld the issuance of bonds and use of the proceeds to purchase mortgages of private residences under the Florida Housing Finance Authority Law, Part IV, Ch. 159, F.S.; the Court stated that the lending of credit means the assumption by the public body of some degree of direct or indirect obligation to pay a debt of the third party; where there is no such undertaking by the public body to pay the obligation from public funds and no public property is placed in jeopardy by default of the third party, there is no lending of public credit. See generally, 56 Am. Jur.2d MunicipalCorporations s 590 (fact that sales price of municipal property payable in installments does not constitute lending or pledging of credit or donation within constitutional provisions prohibiting municipality from lending credit to private corporation or individual or from making donation of public money); 63 C.J.S. Municipal Corporations s 970 (where *3368 terms of sale of municipal property not otherwise prescribed in act of authority, credit may be given in discretion of agency effecting sale). Cf., 81A C.J.S. States s 149 (in absence of restrictions in Constitution, state may sell and dispose of its property on its own terms and conditions for cash or for credit and may take, hold and enforce notes and obligations received from purchases of its property); Engelking v. Investment Board, 458 P.2d 213 (Idaho 1969) (constitutional prohibition against loaning of state's credit implies imposition of new financial liability upon state which in effect results in creation of state debt for private enterprise); Clovis v. Southwestern Public Service Co.,161 P.2d 878 (N.M. 1945) (sale of city property to private corporation payable in installments not violative of Constitution prohibiting lending or pledging of public credit as effect is not to place any burden or charge on revenues of city to bring about any liability of its citizens).
Your letter does not set forth the terms and conditions of the mortgage which the city would hold on the surplus property. If, however, no additional obligation is placed upon the city and there is no assumption by the city, either directly or indirectly, to pay a debt of a third party nor any public property is placed in jeopardy by the default of such party, based upon the foregoing authorities I am of the opinion, until judicially determined otherwise, that the taking back of a mortgage by a municipality under its home rule powers when disposing of surplus municipal property does not constitute a loan or pledge of the public credit within the meaning of s 10, Art. VII, State Const.
Sincerely,
Jim Smith, Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General